[Crim. No. 2954. Third Dist. May 6, 1959.]

THE PEOPLE, Respondent, v. FRANK E. JUDD, Appellant.

Richard G. Hendrix, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Doris H. Maier and Robert K. Puglia, Deputy Attorneys General, for Respondent.

SCHOTTKY, J.—Defendant was charged with two counts of selling heroin in violation of section 11500 of the Health and Safety Code. He waived a jury trial and was found guilty on both counts. Judgment was pronounced and defendant has appealed therefrom.

The principal witness for the People was Jess Ojeda, an inspector with the Bureau of Narcotic Enforcement, who testified that on the night of October 1, 1958, he entered Joe's Place with Jeannine Engl, who had informed him they would meet someone there. Ojeda was out to contact a dope peddler who, Ojeda had been informed, had 27 bindles of narcotics he was willing to sell for $95. After Ojeda and Engl were in the bar the defendant entered and Miss Engl pointed him out to Ojeda. Defendant spoke to Engl and she introduced him to Ojeda. The three left the bar and walked toward an alley. Miss Engl walked across the street, and defendant and Ojeda conversed and reached an agreement governing the sale of narcotics. Ojeda entered his car which was parked in the alley. Defendant walked out of Ojeda's sight. Defendant returned and entered the car and then delivered six white paper bindles, later determined to be heroin, to Ojeda. Ojeda paid him $20 for the heroin. The next day defendant sold more heroin to Ojeda.

At the conclusion of the People's evidence counsel for appellant called Miss Engl as a witness, stating that he was

doing so because appellant insisted upon it. During the direct examination she testified that she knew Ojeda was a narcotic agent; that after she met him they went to Joe's Place so that she could introduce him to the defendant. She was then asked what was the purpose of introducing defendant to Ojeda. An objection to the question was sustained. The question was asked again and again, and objection was sustained. Later she was asked if prior to the meeting there had been any conversation between defendant and herself about selling narcotics. She answered yes before an objection was interposed which the court sustained. Defense counsel then told the court that if it should develop that the dealings between Miss Engl and the agent were to the effect that at the instigation of the narcotic agents she went to the defendant with a proposition to sell some narcotics to the agent, the idea having originated in the mind of the agent, and having been presented to the defendant, entrapment would be proved. The court asked defense counsel if he was going to prove that Miss Engl went to the narcotic agent and made a deal with him and then went to the defendant and made a deal with him to sell to the agent. Defense counsel stated that he did not know what Miss Engl's testimony would be. Thereafter the court sustained an objection to a question whether or not Miss Engl had ever arranged any sales between individuals and Ojeda.

Defense counsel stated that he had not interviewed Miss Engl prior to the time she was called as a witness and that he did not know what her testimony would be, but it is apparent that he was seeking by his questions to show that appellant was entrapped. The appellant did not testify in his own behalf, so there was no testimony by him which would show entrapment.

Appellant's first contention is that his conviction was obtained in violation of due process. He argues that " [t]he defendant is entitled as a matter of due process of law to be allowed to interview and produce any witness who *MIGHT* give evidence favorable to his defense. . . . Where the informer, as in this case, is a material witness there is even more reason to allow the witness to testify. . . . Thus, it is clear that the defendant had a right to put the percipient witness and informer Miss Engl on the stand and inquire as to testimony that might be beneficial to his case." Appellant states that he was prevented from exercising his right in his cross-examination of Ojeda and in his direct examination of Miss

Engl. He quotes from the case of *Roviaro* v. *United States,* 353 U.S. 53, 60-61 [77 S.Ct. 623, 1 L.Ed.2d 639], in which the court said: "[W]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way."

Appellant also cites *People* v. *Alvarez,* 154 Cal.App.2d 694 [316 P.2d 1006]; and *People* v. *Lawrence,* 149 Cal.App.2d 435 [308 P.2d 821]. These cases hold that "[w]hen an informant becomes a participant in the crime charged against the defendant, he and the People lose the right to keep his identity anonymous." (*People* v. *Lawrence, supra.*)

The authorities relied upon by appellant are not in point in the instant case because the identity of the informant, Jeannine Engl, was not concealed, but she was called as a witness by appellant and testified. There is therefore no basis for appellant's contention that he was denied due process of law.

■ Appellant contends also that there was undue restriction of cross-examination of the witness Ojeda. Defense counsel apparently was trying to show entrapment. A reading of the record discloses that the defense counsel was given wide latitude by the court. An objection was sustained to a question whether or not Engl was a narcotics user. This would seem to be immaterial. Ojeda was also asked if he had reason to believe that defendant was the one he had information about. He answered yes, and then he was asked what the reason was. The court correctly sustained an objection to the question as to Ojeda's reason for believing appellant was the one he had information about as being immaterial. Furthermore, in view of the fact it was admitted that Miss Engl was the informer, no possible prejudice could have resulted to appellant from these rulings of the court.

■ Appellant contends further that the court unduly restricted his direct examination of Miss Engl. The rulings complained of appear in the record as follows:

"Q. What was the purpose of going to Joe's Place to introduce him to the defendant? Mr. Wells: I am going to object as not material—not material to any defense outlined by the defendant; it is not material to the issues of the case. The Court: Sustained.

. . . . . . . . . . . . .

"Q. Prior to that time, had there been any conversation between you and the defendant about the defendant selling narcotics to Ojeda? Mr. Wells: Object again as not material,

and beyond the scope—not material. . . . THE COURT: Didn't she testify she .didn't hear any conversation in that regard, or indicate she didn't hear any conversation in the bar? MR. GIBBERT · Let me clarify the question. At any time, regardless of whether it is in Joe's Place, or prior to going to Joe's Place, had you had any conversation with the defendant about the defendant's selling narcotics to Mr. Ojeda? A. Yes. MR. WELLS: Just a moment—object again. THE COURT: I sustain the objection.

. . . . . . . . . . . .

"Q. Miss Engl, prior to October first had you ever on any other occasions arranged any sales or purchases between individuals and Mr. Ojeda? MR. WELLS: I am going to object. THE COURT: Sustain the objection."

It is evident that appellant was seeking to prove entrapment, and the court should have permitted the witness to answer the questions. ■ As stated in *People* v. *Schwartz,* 109 Cal. App.2d 450, at page 454 [240 P.2d 1024] : "Entrapment is the conception and planning of an offense by an officer and his procurement of its commission by one who would not have perpetrated it except for the trickery, persuasion, or fraud of the officer.'' ■ Appellant was entitled to show by the witness Miss Engl, if he could, that he had been induced by the officers to make the sale to Ojeda. In view of the fact that Miss Engl was admittedly working in conjunction with the Bureau of Narcotic Enforcement, such testimony might well have laid the basis for the defense of entrapment. It is difficult to understand why the prosecutor would object to these questions because if there was no basis for defense of entrapment Miss Engl's answers would have been to that effect; and if there was any basis for the defense of entrapment, appellant was entitled to have the questions answered.

Respondent argues that unless the defendant takes the stand and admits the commission of that act, or adduces evidence affirmatively showing that he committed the crime charged, the defense of entrapment is not put into issue. Respondent quotes the following from *People* v. *Schwartz, supra,* at page 455:

" '. . . [T]he defense of entrapment is a positive defense imposing upon an accused the burden of showing that he was induced to commit the act for which he is on trial. . . . To invoke the defense it must necessarily be assumed that the act charged as a public offense was committed. In the instant case, appellant did not take the stand in his own defense. In

the court below *he made no claim that he committed the crime charged* but was induced, lured, persuaded or inveigled into having in his possession the morphine tablets in question. His claim in that regard lacks substance here. . . .' (Emphasis added.)''

Respondent argues: ''He did not take the stand. Neither did he adduce any evidence that he committed the crime charged yet was induced or inveigled into its commission. In this state of facts, the defense of entrapment has not been put into issue and the excluded testimony which the appellant attempted to elicit from Jeannine Engl was clearly immaterial to any issue in the case.''

We are unable to agree with respondent that the evidence which appellant sought to introduce was immaterial because appellant did not take the stand or adduce any evidence of entrapment. The fact that appellant did not testify would affect the weight of the evidence but would not affect its materiality. Defense counsel might well conclude that it would avail nothing to have appellant testify unless he could elicit some testimony from Miss Engl to support a defense of entrapment.

We believe that the court erred in sustaining the objections to the questions asked of Miss Engl as hereinbefore set forth. We, of course, do not know what the answers to the questions would have been; but appellant was entitled to have them answered and depriving him of that right constitutes very serious error, requiring in our opinion a reversal of the judgment. We cannot assume that because there may have been ample evidence to support the judgment a different result would not have been probable if Miss Engl had been permitted to answer the questions and had given evidence upon which the defense of entrapment could have been based.

 Appellant contends further the prosecutor was guilty of prejudicial misconduct in making the following remark: ''Mr. WELLS: In this matter, I am going to again ask the Court to ask defense counsel if that is what he expects to prove through this, his own witness, whom he subpenaed, and undoubtedly has talked to, and knows what she is going to testify to—otherwise, these are wild schemes, and it is only in bad faith he's called this witness in this instance.'' However, appellant failed to object to the remark at the time, nor did he move to strike it, so he may not complain of it for the first time on appeal.

Appellant also assigns as misconduct a remark of the prosecuting attorney that the defense had perpetrated a fraud on the court. A motion to strike does not appear to have been ruled on. We do not believe that appellant suffered any prejudice from this remark made in a nonjury trial.

For the error hereinbefore noted the judgment is reversed.

Van Dyke, P. J., and Peek, J., concurred.