Quinton SPEARS, Jr. *v.* STATE of Arkansas

CR 77-84 568 S.W. 2d 492

Opinion delivered July 17, 1978
(Division II)

*Guy Jones, Jr., Guy H. Jones, Phil Stratton,* and *Casey J. Jones,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Joseph H. Purvis,* Deputy Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Quinton Spears, Jr. was charged with delivery of one pound of marijuana on June 19, 1975, and sale or delivery of phencyclidine, sometimes called PCP or T to Don Sanders of the Arkansas State Police on three separate occasions, i.e., on June 5, June 6, and June 15, 1975. His defense was entrapment by an informant variously known as Junior Caldwell, Izzy Caldwell, Izzie Lee Caldwell, Jr., Isaac Dominic, Isaac Dominy, Izzie Dominy and Izzie Lee Dominy (or Dominic). Spears was found guilty on all four counts and was given a sentence of eight years and a fine of $8,000 for sale or delivery of marijuana and three years for delivery of PCP in each case and fined $2,000 on one charge and $1,000 each on the other two. He asserts six points for reversal. We find reversible error as hereinafter indicated.

I

The first point has to do with the form of the jury verdicts. In each case, the verdict provided for a prison sentence and a fine. The statute under which the charges were laid [Ark. Stat. Ann. § 82-2617 (Repl. 1976)] provides in every instance for a prison sentence or a fine or both. The forms submitted to the jury did not indicate that the jury had the right to impose either a prison sentence or a fine or both. The form indicated that both imprisonment and fine were mandated. No instruction as to punishment was given by the trial court. The only reference to the permissible punishment on the charges presented to the jury was in the forms of verdict submitted. A form typical of them follows:

"We, the jury, find the defendant, Quinton Spears, Jr., guilty in Case #CR-75-187 in that he did deliver a controlled substance, phencyclidine, to Don Sanders for the sum of $10.00 on June 15, 1975, *and* fix his punishment at          years in the Arkansas State Penitentiary and          dollars. (3 to 10 years and up to $15,000.00)."
[Emphasis ours.]

Although the verdict form submitted in *Harris* v. *State,* 262 Ark. 680, 561 S.W. 2d 69, used the conjunction "and/or" rather than "and" to join the phrases on potential imprisonment and on potential fine, we reversed a verdict in which the jury had inserted a term of years in the blank for imprisonment and an amount in dollars in the blank for fine, because the verdict form did not sufficiently explain the options available to the jury in fixing punishment. Even though the use of "and/or" in civil or criminal proceedings has been condemned and described as "slovenly" pleading, and as having brought more confusion than clarity to the task of construction of statutes, contracts and pleadings, it does not render a sentence in which it is used meaningless if the intention of the user can be ascertained so this "hybrid" conjunction can be taken to mean either "and" or "or." See *Gurein* v. *State,* 209 Ark. 1082, 193 S.W. 2d 997; *Heath* v. *Westark Poultry Processing Corp.,* 259 Ark. 141, 531 S.W. 2d 953. In *Harris,* we could not determine the intention of the jury, even though an instruction as to the options had been given. The lack of any advice to the jury, other than the verdict forms, is certainly more prejudicial to the accused than was the case in *Harris.*

We must reverse the judgment on the basis of the verdict forms submitted, unless the failure of appellant to object constituted a waiver. In *Rowland* v. *State,* 263 Ark. 77, 562 S.W. 2d 590, where the form of verdict did not mention punishment alternatives and the trial judge had fully instructed the jury on that subject, we held that there was no reversible error in the jury verdict imposing both forms of punishment, even though appellant had objected to the failure of the form of verdict to state the options. We pointed out that, if a defendant desires a particular form of verdict, or any instruction to the jury as to the form submitted, it is his duty to prepare and submit a correct form or instruction and request the trial court to submit or give it. This was not done in this case, probably because the trial court informed the jury just prior to commencement of arguments by the attorneys that verdict forms would be prepared for each case and stapled together and that the attorneys would explain them, and the punishment on a finding of guilty, to the jury.

Appellant says that his attorney never had an opportuni-

ty to see the forms or to either explain or object to them, because the trial judge, instead of furnishing the forms to trial counsel, handed them directly to the jury. He relies upon the holding in *Alford* v. *State,* 223 Ark. 330, 266 S.W. 2d 804. In *Alford,* the death penalty had been imposed and we held that it is the affirmative duty of the trial court to bring to the attention of the jury, the option it then had between the death penalty and life imprisonment, and that the failure to do so was reversible error, in spite of the fact that the accused had not asked the court to do so. The rule of *Alford* once was reserved for capital cases. See *Webb* v. *State,* 154 Ark. 67, 242 S.W. 380, 383 (opinion on rehearing). We did not apply it in *Brown* v. *State,* 261 Ark. 683, 550 S.W. 2d 776, as appellant contends, where the appellant submitted proper forms of verdict. We will not apply it in cases arising after the decision in *Goodwin* v. *State,* 263 Ark. 856, 568 S.W. 2d 3, because of the many opportunities to raise the question in the trial court pointed out in *Goodwin* and *Rowland* v. *State,* supra. In other words, a question of this sort must first be raised in the trial court, before we will consider it on appeal.

The state does not concede that appellant was deprived of an opportunity to raise the question here. It asserts that there were three opportunities afforded appellant. It first points out that appellant requested no instruction as to the possible punishments. But appellant may not have felt it necessary when verdict forms might have been submitted which themselves furnished adequate explanation. See *Shelton* v. *State,* 261 Ark. 816, 552 S.W. 2d 216, decided after this case was tried. The state also contends that appellant could have presented his own suggested form of verdict. But *Rowland* v. *State,* supra, was not decided until after this case was submitted. Appellee also contends that, since the trial judge stated that the attorneys would explain the verdict form, it is obvious that appellant's attorney saw the forms at some time prior to their delivery to the jury. In view of a silent record, we cannot assume that this is so, and must give appellant the benefit of any doubt about the matter. We are compelled to reverse the judgment on this ground.

## II

Appellant argues that the trial court erred in excluding

testimony relative to Junior Caldwell, an admitted state informant, whom appellant describes as an informant, perpetrator and agent provocateur for one Don Sanders, an undercover agent with the narcotics section of the Arkansas State Police. Appellant caused a subpoena to be issued for Caldwell. Although it was served, Caldwell failed to appear and the court ordered a warrant of arrest to be issued for him. The warrant was placed in the hands of the sheriff of Faulkner County. It was never served and Caldwell did not appear. Apparently, the failure to execute the warrant was attributable to the fact that Caldwell was then in the naval service of the United States. Appellant's defense was that he was entrapped by Caldwell and that Caldwell was not only the source for the marijuana he procured, but that he enticed appellant to enter into the transactions which resulted in the charges against appellant.

The first witness who was not permitted to testify was Lynn Bell. At a pretrial hearing at which the trial court ruled her testimony inadmissible, she testified that her relationship with Caldwell was very close, and that she was a confidant of his. She said that Caldwell had sold drugs in Faulkner County and had gotten into trouble in Stone County, after which his financial condition was such that he lived off her. She said she accompanied him to Mountain View when he was arraigned on the Stone County charges. Appellant's efforts to proffer the testimony of this witness were abruptly halted by the trial judge, who held that her testimony was not competent in any way. Appellant's attorney then stated that if permitted to testify, this witness would say that:

> Caldwell had dealt in controlled substances for a number of years; she had worked with him and tried to get him out of the drug traffic; after telling her that, in order to get out of trouble himself, he would have to set other people up, he had a conference with Jerry Roberts, an undercover state police officer, and thereafter his car, which was "shot" had been repaired and four new tires placed on it; Caldwell told her that he was going to "set up" people by causing them to purchase or secure controlled substances and that Quinton Spears, Jr. was one of the individuals that he was to induce or entice or

otherwise cause to procure marijuana and other drugs; Caldwell was following the advice of Roberts and Sanders and told her that he was to be paid by state or federal authorities; just before Caldwell went into the navy, he had called her by telephone and told her that he had "set up" many of his close friends in transactions at the request of Arkansas State Police and federal officers.

Appellant did not contend that this witness was present during any transaction in which he was involved. The trial judge held that this testimony would be inadmissible, since Caldwell would not testify. Of course, the trial court's ruling was correct insofar as the testimony related to any bias of Caldwell in the matter.

It was shown in camera that the state had paid for meals and lodging for Caldwell while he was working with the undercover agents from March to July, 1975. Appellant's attorney offered, but was not permitted, to show that one of the undercover agents negotiated with the authorities in Stone County for nolle prosequi of the charges against Caldwell there in order to compel Caldwell to comply with the requests and directions of Roberts, another state police undercover agent, for fear of reinstatement of the charges. Roberts did testify, also in camera, that he told Caldwell he would report whatever Caldwell did for the police in effecting arrests of other drug "pushers" to the prosecuting attorney in the district in which Stone County was located and that, pursuant to this "deal," the charges were either dismissed or "nolle prossed." Roberts said that Caldwell worked with him, Sanders, and another officer named Best. Sanders said that he told Caldwell, at their first meeting, that he expected Caldwell to set up everyone he could.

At the trial, Sanders testified that Caldwell had introduced him to Spears and was with Sanders on four occasions, that he purchased controlled substances from Spears and, on the last of these occasions, Caldwell had made a telephone call to Spears on the night preceding the purchase. On the first occasion, he said that Spears came up to a car in which he and Caldwell were sitting and asked if Sanders wanted to buy a certain controlled substance. Sanders had

arrested Caldwell at Mountain View. He said that while working with him, Caldwell had followed his directions explicitly and that on one occasion he did direct Caldwell to call Spears, and that Caldwell had appeared to be Spears' friend. Sanders knew that Caldwell's car had been dilapidated, that its motor was missing and that it needed new tires. Sanders said that he had obtained employment with a marine company for Caldwell, who worked there for a while.

Spears testified that he and Caldwell had been casual friends when Caldwell started supplying him with marijuana and diet pills in 1974. According to Spears, Caldwell started calling him one to three times a day in May, 1975 and accosted him on the streets looking for drugs and continued to do so, until he finally obtained a quantity of a drug Caldwell wanted from a seller from whom he knew Caldwell had purchased controlled substances. This, said Spears, was the drug he delivered on the first occasion Sanders described. Spears testified that Caldwell awakened him the next morning and begged him urgently to obtain more of the drug and, after refusing, he finally consented to do so "one more time" because Caldwell "needed it," but said that this would be the last time. Spears said that after delivering this package, he told Caldwell, in the presence of Sanders, to get away from him and stay away. Thereafter, he said, Caldwell called him at least two or three times a day. He was prevented by the court from stating what was said by Caldwell on these occasions. He admitted having obtained a quantity of the same controlled substance from the same source on one other occasion, after numerous calls by Caldwell, but said that he again told Caldwell in the presence of Sanders that he wanted no "part of it." He was not permitted to state Caldwell's response.

On several occasions the court prevented Spears from testifying to what Caldwell had said to him. Spears said that he had obtained the drugs because Caldwell badgered him and because he felt sorry for Caldwell. He said he had advised him to see a drug counselor. According to Spears, whenever he saw Sanders and Caldwell they were in Caldwell's car. He also said that on every occasion, the deliveries were made to Caldwell and Caldwell paid him, that

he never had any conversation with Sanders about the transactions and that Sanders had never paid him any money.

Appellant also offered the testimony of Bruce Sellers that he was present when Caldwell was served with a subpoena and that Caldwell had said that he was not about to go to Judge Roberts' blankety blank court and that Jerry Roberts had promised to pay him $1,000 for setting everybody up and making a bust to get his record erased in Stone County.

The question is one of relevance to the defense of entrapment. Entrapment occurs when any person acting in cooperation with a law enforcement officer induces the commission of an offense by using persuasion or other means likely to cause normally law-abiding persons to commit the offense. Ark. Stat. Ann. § 41-209 (2) (Repl. 1977).[1] Primary importance is accorded to the conduct of a law enforcement officer, or the person acting in cooperation with him. See Commentary § 41-209. Any evidence having any tendency to make the existence of entrapment more probable is admissible. Ark. Stat. Ann. § 28-1001, Rule 401 (Supp. 1977). The accused should be allowed a reasonable latitude in presenting whatever facts and circumstances he claims constitute an entrapment, subject to ordinary rules of admissibility. *State* v. *Chacon,* 37 Idaho 442, 216 P. 725 (1923). See also, *State* v. *Nelon,* 232 N.C. 602, 61 S.E. 2d 626 (1950). The proffered testimony of Lynn Bell and Bruce Sellers should have been admitted.

Showing that Caldwell was addicted to drugs and had dealt in them was relevant. Statements made by him pertaining to his motivation to induce an acquaintance to deliver controlled substances would be relevant. The state contends that this testimony was properly excluded as hearsay. A declaration by Caldwell of his intent, plan, motive or design was not excluded by the hearsay rule. Ark. Stat. Ann. § 28-1001, Rule 803; 4 Weinstein's Evidence 801-6C, § 801 (c) (01). The conduct of a government informant in connection

---

[1]Although this section of the Arkansas Criminal Code would not have otherwise been applicable, defendant elected to avail himself of the right to have the construction and application of any defense governed by the provisions of the code.

with the transaction, and the purposes of his conduct and communications are proper matters for examination and inquiry at the trial. *Sherman* v. *U.S.*, 356 U.S. 369, 78 S. Ct. 819, 2 L. Ed. 2d 848 (1958); *People* v. *Judd*, 170 Cal. App. 2d 212, 338 P. 2d 458 (1959). The fact that Caldwell did not testify was not a proper basis for excluding, as collateral, testimony relating to his activities with relation to Spears. *French* v. *State*, 260 Ark. 473, 541 S.W. 2d 680. Appellant also should have been permitted to show the charges placed against Caldwell and their disposition, particularly in view of the fact that Sanders, who arrested Caldwell, testified that Caldwell was not to receive anything at all in exchange for his helping Sanders "set up everybody he could" and taking Sanders to everybody who sold drugs. It should be mentioned that Spears testified that he had never previously sold or delivered controlled substances.

Appellant also sought to show by the testimony of Joe Martin, Sheriff of Faulkner County, that a warrant of arrest had been issued for Caldwell. The state contends that there was no error because the records from the sheriff's office could have been introduced at any time. Appellant was entitled to show his efforts to obtain the testimony of Caldwell, which was very material on the defense of entrapment, and to explain his absence, in order to attempt to avoid the jury's drawing of inferences unfavorable to him and rejecting his testimony as to the facts relating to the transactions in which Spears admitted involvement, because of the absence of this witness. *Long* v. *State*, 72 Ark. 427, 81 S.W. 387. The sheriff would have been the appropriate vehicle for the introduction of the records of his office. There is nothing in this record to indicate that they would have disclosed the reasons why efforts to obtain the attendance of Caldwell were unsuccessful.

The testimony of Judy Rowlett tending to show bias of Roberts toward appellant was not admissible because Roberts did not testify.

### III

Appellant contends that the trial court erroneously excluded or limited his testimony as to conduct, actions, con-

versations and communications of Caldwell. In many instances of which appellant complains no proffer of the evidence was made and it appears that some of this testimony might not have been relevant. It also appears that, on occasion, the trial judge restricted or prevented proffers suggested by appellant's attorney. Suffice it to say that any statement made by Caldwell to, or in the presence of appellant, indicative of the fact that Caldwell was using persuasion or other means to induce a normally law-abiding person to deliver controlled substances was admissible, not to show the truth of Caldwell's statements, but to show that they were made. *Wilson* v. *State,* 261 Ark. 5, 545 S.W. 2d 636. See also, Ark. Stat. Ann. § 28-1001, Rule 801 (c) and authorities above cited.

## IV

Most of appellant's arguments on this point are so similar to those advanced by the appellant in Goodwin v. *State,* 263 Ark. 856, 568 S.W. 2d 3, with reference to the production of various records, reports and writings, that what we said there is dispositive of them. In addition, appellant complains that his attorney was not permitted to examine records and reports relating to payments made to Caldwell. Although Lt. Beach admitted, at a hearing held some eight months prior to trial, that he could provide the prosecuting attorney with such records, the trial judge directed appellant's attorney to issue a subpoena duces tecum for the records. The subpoena was issued on the first day of the trial and served just before noon recess on that day. The trial judge ruled that he would not compel production of the records due to lack of diligence in obtaining the subpoena. There is nothing in this record indicative of any abuse of discretion. Appellant seeks to excuse the delay by reference to a court order relating to state police records entered in State v. Goodwin (which was appealed to this court and docketed as *Goodwin* v. *State,* CR 77-85, supra), which would have permitted the same attorney to inspect these records. He refers us to the transcript in that case for substantiation. We cannot, however, take judicial notice of records in other cases. *Murphy* v. *Citizens Bank of Jonesboro,* 82 Ark. 131, 100 S.W. 894, 11 LRA (n.s.) 616, 12 Ann. Cas. 535.

# V

Appellant contends that the court erred in refusing to give his requested instructions on the defense of entrapment. The state contends that there was no error because the matters covered in them were properly covered by instructions actually given by the court and because one of them was an incorrect statement of the law as to the burden of proof. Although neither brief has proven to be much help to us on this point, we must treat it because of the likelihood that it will arise on a retrial. Most of these requested instructions were adequately covered in instructions given. We will treat only those that we cannot say with assurance were adequately covered.

By his requested instruction No. 4, appellant asked that the jury be instructed that the defense of entrapment was available if, by inducement of persons who were not law enforcement officers, one was lured into the commission of a criminal act, which he would not have otherwise performed, for the purpose of having him arrested and punished. It should be noted, at the outset, that we have previously considered the defense of entrapment from the standpoint of case law. See *Peters* v. *State,* 248 Ark. 134, 450 S.W. 2d 276. Appellant was not entitled to this instruction under our case law. The appropriate distinction was pointed out in *Whittington* v. *State,* 160 Ark. 257, 254 S.W. 532, where we upheld the action of the trial court in refusing to submit the question of entrapment to the jury in a case where defendant was charged with illegally selling intoxicating liquors. The defendant had asserted the defense that the liquor was purchased from him for the very purpose of having him prosecuted for its sale and requested that the jury be instructed that, if this was true, he was entrapped and not guilty. We said:

> *** There is a clear distinction between inducing a person to do an unlawful act for the purpose of prosecuting him, where the consent of the prosecuting witness is a necessary element of the offense, and catching the offender in the execution of a criminal design of his own conception.

> In certain crimes relating to person or property, consent is a necessary element of the offense, and, where the accused is lured into the commission of such a crime for the very purpose of prosecuting him therefor, there are well-considered cases holding that no conviction may be had. Prosecutions under the liquor laws do not fall within this class of cases. The sale of intoxicating liquors contrary to the statute depends after all upon the voluntary act of the person selling the liquor. The fact that an officer of the law procured a detective or other person to purchase the liquor for the purpose of convicting the defendant can make no difference, since an officer cannot, by consenting to the sale, justify the illegal act of selling on the part of the defendant, any more than could the consent of any private person justify the sale. The mode adopted by the officer in this case to bring to light the fact that the defendant was selling intoxicating liquors had no necessary connection with his violation of the law.

We find nothing in the Criminal Code that changes the law in this respect.

Appellant asked by his requested instruction No. 11 A that the jury be instructed that, in determining the question of entrapment, it must examine the statements and conduct of the officer, *rather* than the defendant's predisposition. This instruction, as worded, is not wholly correct. It has been held that merely affording one an opportunity to do that which he is otherwise ready, willing and able to do is not entrapment. *Peters* v. *State,* supra. The new statute does not materially change the law in that respect. Under case law, where the defense was entrapment, a searching inquiry into the defendant's conduct and predisposition has been held to be appropriate on the issue. *Sherman* v. *U.S.,* 356 U.S. 369, 78 S.Ct. 819, 2 L. Ed. 2d 848 (1958); *Sorrells* v. *U.S.,* 287 U.S. 435, 53 S. Ct. 210, 77 L. Ed. 413, 86 ALR 249 (1932). See also, *Peters* v. *State,* supra. The statute changes the rule only by focusing the inquiry so as to attribute *more* importance to the conduct of the law enforcement officers than to any predisposition of the defendant, and the question is directed to the effect of that conduct on "normally law-abiding persons." The purpose is

to discourage government conduct that might induce innocent persons to engage in criminal conduct. Commentary, Ark. Stat. Ann. § 41-209. Conduct of the officer or informant merely affording the accused the opportunity to commit an offense is not entrapment. Ark. Stat. Ann. § 41-209. Thus, defendant's conduct and predisposition, both prior to and concurrent with, the transactions forming the basis of the charges are still material and relevant, on the question whether the government agents only afforded the opportunity to commit the offenses with which he is charged. *Grossman* v. *State,* 457 P. 2d 226 (Alaska, 1969).

Appellant also asked that the jury be instructed that the state had the burden of showing that the conduct of the police officers was not part of a plan to lure, entice, deceive or induce a sale of narcotics by defendant. The trial court correctly instructed the jury that entrapment was an affirmative defense. See § 41-209 (1); *Brown* v. *State,* 248 Ark. 561, 453 S.W. 2d 50. He also correctly stated that this defense must be proved by the defendant by a preponderance of the evidence. Ark. Stat. Ann. § 41-110 (4) (Repl. 1977).

The requested instruction does not conform to these requirements of existing law, established either by the Criminal Code or pre-Code case law. There is no suggestion by appellant that the requirements of existing law are invalid. The defense of entrapment is an affirmative defense which was unknown to the common law. 21 Am. Jur. 2d 212, Criminal Law § 144. But there can be no entrapment unless the law has been violated. *Brown* v. *State,* supra. See also *Peters* v. *State,* supra. The defense has been aptly described as one of confession and avoidance. *State* v. *Hsie,* 36 Ohio App. 2d 99, 303 N.E. 2d 89 (1973). But this does not mean that the defense may not be raised along with a plea of not guilty. This was pointed out in *Rodriguez* v. *U.S.,* 227 F. 2d 912 (5 Cir., 1955), which was the authority for our holding in *Brown.* See also, *State* v. *Hsie,* supra. Thus, the state still bears the burden of proving all the elements of the offense charged. But the defendant, in order to "avoid" a finding of guilt, must show entrapment to commit the offense by a preponderance of the evidence. The situation is analogous to a defendant's seeking to exonerate himself from criminal liability by showing justification

or excuse. See *Buckingham* v. *State,* 32 Ark. 218. The act of the defendant in such a case is admittedly criminal. The purpose of allowing the entrapment defense is to discourage government activity that might induce innocent persons to engage in criminal conduct. Commentary, Ark. Stat. Ann. § 41-209. Since there first must be a violation of the law, before the defense is available, the burden of proving entrapment properly rests on the defendant.

The majority of the court is of the opinion that the court should have given all of appellant's requested instruction No. 5, with the exception of the last sentence.

## VI

Appellant also contends that the court should have taken further steps to procure the attendance of Junior Caldwell, who had ignored a subpoena and apparently avoided the service of a bench warrant. Appellant moved for action under Ark. Stat. Ann. § 43-2004 et seq (Repl. 1977) and Ark. Stat. Ann. § 27-2501 et seq (Supp. 1977). We do not see how the latter statute has any bearing on the subject. Since the testimony of Caldwell was material, a matter for consideration in applying the former statute was whether it was necessary. Where there is an admitted informer who was a participant in transactions in controlled substances, the state should make every effort to produce him or to assist an accused in doing so. Jerry Roberts testified that Caldwell had promised to be present. Eight months had elapsed after the court had directed that the warrant be issued. We are not satisfied that appellant had exercised sufficient diligence in the matter to be in a position to complain. His motion for a continuance is now moot. He should now be in a position to take timely steps to invoke the processes of the court to obtain the attendance of the witness, or to obtain his testimony by some alternative means as the state has suggested. This matter should be presented in a different light before a new trial is commenced.

## VII

Appellant contends that the trial court erred in permitting the state to present the testimony of Jess Baker, Jr. that

he had purchased controlled substances from appellant on three different occasions between September 1974 and April 1975. This testimony was offered as a part of the state's case in chief. There was no evidence of entrapment in the state's evidence. Under the entrapment statute, this testimony was not proper at that stage of the proceeding. It would not be proper to show intent, because appellant was charged with delivery, not possession with intent to deliver. *Sweatt* v. *State*, 251 Ark. 650, 473 S.W. 2d 913. But the testimony would have been proper in rebuttal to appellant's testimony relating to entrapment, because it would be relevant to the question whether the conduct of the undercover officer, and more particularly, his informant, did more than afford appellant an opportunity to make a sale of controlled substances. *Sweatt* v. *State*, supra; *Cary* v. *State*, 259 Ark. 510, 534 S.W. 2d 230. See also, Ark. Stat. Ann. § 28-1001, Rule 404 (b).

For the errors indicated, the judgment is reversed and the cause remanded.

We agree. GEORGE ROSE SMITH, HOLT, BYRD and HICKMAN, JJ.