487 So.2d 291 (1986)
Eugene Edward MORRIS, a/k/a Mercury Morris, a/k/a Eugene Morris, Petitioner,
v.
STATE of Florida, Respondent.
No. 66120.
Supreme Court of Florida.
March 6, 1986.
Rehearing Denied May 20, 1986.
Bennett H. Brummer, Public Defender, Miami, Philip Glatzer and Ronald I. Strauss, Sp. Asst. Public Defenders of Highsmith, Strauss & Glatzer, Coconut Grove, N. Joseph Durant, Sp. Asst. Public Defender of Gelber, Glass, Durant, Canal and Pineiro, Miami, and Robert Augustus Harper, Jr., Co-counsel, Tallahassee, for petitioner.
Jim Smith, Atty. Gen., Janet Reno, State Atty. and Anthony C. Musto, Asst. State Atty., Miami, for respondent.
PER CURIAM.
This cause, Morris v. State, 456 So.2d 471 (3d DCA 1984), is before us due to express and direct conflict with decisions of several district courts of appeal. We have jurisdiction pursuant to article V, section 3(b)(3), Florida Constitution.
Asserting the affirmative defense of entrapment, Eugene Edward "Mercury" Morris pleaded not guilty to charges of conspiracy to traffic in cocaine, trafficking in cocaine, two counts of sale or delivery of cocaine, and two counts of possession of cocaine. The jury acquitted him of the two counts of sale or delivery of cocaine, but found him guilty of the remaining counts. He was sentenced to twenty years' imprisonment with a mandatory fifteen year period pursuant to section 893.135(1)(b)(3), Florida Statutes (1981); the district court affirmed.
Evidence introduced at trial disclosed that in the summer of 1982 Morris hired a friend, Fred Donaldson, to do some gardening. Donaldson, on probation for aggravated battery and under order to pay restitution, believed Morris intentionally failed to pay him for the work in order to have him sent back to jail.
Donaldson called the police on August 6 regarding Morris's alleged involvement in using and selling cocaine. Chief Investigator Havens investigated Morris and found no record of cocaine use or sale in any local, state or federal law enforcement agency. An investigation of Donaldson revealed a criminal background, and Havens considered him to be unreliable.
Donaldson called again on August 10 to say that Morris was expecting a shipment soon and on August 13 to say Morris had received a shipment. At some point Havens *292 told Donaldson to go to Morris's house, which he did on August 15.
Donaldson called Havens again on August 16, and Havens arranged for Donaldson to make a recorded call from the state attorney's office to Morris to verify Donaldson's story. During the call a meeting was arranged between Morris and Joe Brinson, an undercover agent posing as Donaldson's drug dealing friend. Joe offered to buy two kilos of cocaine and showed Morris $120,000 at the meeting that afternoon. Upon Donaldson's request, Morris gave Brinson a small sample of cocaine.[*] There were four more meetings that day during which Morris produced no cocaine. During one of the meetings, Morris suggested that they go the the nearby residence of a woman who was one of his user sources in order to obtain cocaine. Havens had instructed Brinson to deal only with Morris, so Brinson rejected the suggestion. Brinson told Havens, at the end of the day, that he did not believe Morris had any cocaine. Havens instructed Brinson to continue to solicit and encourage Morris.
Donaldson placed a recorded call on August 17 to Morris to arrange another parking lot meeting, at 3 p.m. Although Morris agreed to the meeting, he did not arrive. He later said he would not deal at a parking lot and that Brinson would have to go to his house for a sample. The evidence is somewhat confusing as to meetings later that day at Morris's house, but apparently there were two during one of which Brinson got a one-ounce sample of cocaine from Morris for purposes of quality analysis. There was a final meeting that day at 9:30 p.m. Morris appeared without cocaine and left after about twenty seconds, telling Brinson he wanted him to come to his house. Brinson and Donaldson tried to call Morris at home, but were unable to reach him. Brinson testified that although he had intended to continue the investigation until Morris sold him two kilos of cocaine, by August 17 he was ready to buy anything Morris had.
Donaldson and Brinson called Morris again on the morning of August 18 and set up a meeting at Morris's house for that afternoon at 3 p.m. During that meeting Morris's user source, Vincent Cord, finally came through and brought nearly one-half kilo of cocaine, which Morris delivered to Brinson.
Informant Donaldson did not testify at trial, but Morris, testifying in support of his entrapment defense, admitted to being a cocaine user. According to Morris's testimony, Donaldson told him in early August that he was going to get even with him for not paying for the gardening. Donaldson urged him, at the August 15 visit, to meet with his friend from New York (actually undercover agent Joe Brinson) for the purpose of introducing the friend to Morris's cocaine source. Donaldson told Morris that it was Morris's fault that he (Donaldson) was in trouble for arrearages owed to the state, but that if Morris agreed to help it would be a way for them to be "square" with the money. He said he would go to jail if Morris did not pay him and it would be Morris's fault. Morris said he would see what he could do, but he did not think it could be done. Donaldson gave Morris a small sample of cocaine to give his "New York friend" the next day.
Morris testified that he would not have gotten involved but for Donaldson. Morris sought unsuccessfully to introduce the testimony of one Eugene Gotbaum, who, according to his sworn affidavit and the proffer of defense counsel, would have testified that Donaldson told him at some point prior to Morris's arrest that he intended to set up Morris in some sort of drug deal.
The jury was entitled to disbelieve Morris's testimony or give it little weight. However, in evaluating Morris's testimony, the jury was not permitted by the trial court to consider Gotbaum's testimony, which would have been corroborative of Morris's and therefore highly valuable to the defense. The trial court excluded the *293 proffered testimony as inadmissible hearsay. The district court found the state-of-mind exception to the hearsay rule, section 90.803(3)(a) 1 and 2, Florida Statutes (1981), inapplicable because it found Morris's, not Donaldson's, state of mind to be at issue as it was undisputed that Donaldson informed the police of Morris's activities. Our consideration of this issue necessitates a brief overview of the law of entrapment in Florida.
In Cruz v. State, 465 So.2d 516 (1985), cert. denied, ___ U.S. ___, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985), we expanded the previous entrapment law which focused primarily on the subjective view of the defendant to determine whether he was predisposed to commit the crime charged, a jury question. We held that before the issue is given to the jury, the trial court must determine whether the police conduct was permissible. The latter inquiry is known as the objective test and involves a two-part inquiry: 1) Does the police activity have as its end the interruption of a specific ongoing criminal activity, or, would no crime exist but for the police activity engendering it? 2) Does the police activity use means reasonably tailored to apprehend those involved in the ongoing criminal activity? Inappropriate techniques would include a) making knowingly false representations designed to induce the belief that the conduct is not prohibited, and b) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it. Id. at 522. This inquiry parallels a due process analysis, but is not founded on constitutional principles.
In State v. Wheeler, 468 So.2d 978 (Fla. 1985), we adopted the four-step procedure of Moody v. State, 359 So.2d 557 (Fla. 4th DCA 1978), regarding the burden of proof in the subjective phase of entrapment cases:
The defendant has the initial burden of establishing a prima facie case of entrapment. The trial court determines the legal sufficiency of the evidence of entrapment. If the defendant has not made a prima facie case, the defense of entrapment does not go to the jury. If, however, a prima facie case is made, the issue of entrapment is submitted to the jury with appropriate instruction, Florida Standard Jury Instruction (Criminal) 3.04(c), but the jury is not instructed on the defendant's initial burden of establishing a prima facie case. The burden lies with the state to disprove entrapment, which is usually done by proving the predisposition of the defendant beyond a reasonable doubt.
Wheeler, 468 So.2d at 981.
With the foregoing in mind, we consider the admissibility of Gotbaum's testimony. Section 90.803 excepts from the hearsay rule the following:
(3) Then existing mental, emotional, or physical condition. 
(a) A statement of the declarant's then existing state of mind, emotion, or physical sensation, including a statement of intent, plan, motive, design, mental feeling, pain, or bodily health, when such evidence is afforded to:
1. Prove the declarant's state of mind, emotion, or physical sensation, at that time or at any other time when such state is an issue in the action.
2. Prove or explain acts of subsequent conduct of the declarant.
We find that section 90.803(3)(a)2 applies to render Gotbaum's testimony regarding Donaldson's statement admissible as a hearsay exception, tending to prove Donaldson's subsequent conduct relative to Morris. See Jenkins v. State, 422 So.2d 1007 (Fla. 1st DCA 1982), disapproved in part on other grounds, 444 So.2d 947 (Fla. 1984). The state stipulated that Donaldson was its agent. Conduct of government agents is the primary inquiry made by the trial court under the objective test, but it is not irrelevant under the subjective test and should be factored into the jury's consideration. In order for the jury to consider predisposition, it must have all facts relating to government inducement. Standard Jury Instruction 3.04(c) requires consideration *294 of whether the defendant was "persuaded, induced or lured into committing the offense ... [by] a law enforcement officer, or someone acting for the officer."
Donaldson was a police agent when he visited Morris on August 15 and requested that Morris assist in the drug deal. Morris testified that if Donaldson had not approached him he would not have participated. A witness testified to being at the Morris house on August 15 when Donaldson was there and hearing Donaldson say, "This is the way you could pay me back and we could make some money." She also heard, "Here's the sample. Please give it to them tomorrow." Morris introduced sufficient evidence of entrapment to make a prima facie case. The state therefore had to prove predisposition beyond a reasonable doubt. Wheeler. We find that Gotbaum's testimony regarding Donaldson's statement of intent to set up Morris should have been before the jury for consideration as to whether, as an agent of the police, Donaldson impermissibly induced Morris, prior to the telephone call on August 16, to commit the crimes for which he was convicted. "The accused should be allowed a reasonable latitude in presenting whatever facts and circumstances he claims constitute an entrapment subject to ordinary rules of admissibility." Spears v. State, 264 Ark. 83, 92, 568 S.W.2d 492, 499 (1978), citing State v. Chacon, 37 Idaho 442, 216 P. 725 (1923). "Statements made by [the confidential informant] pertaining to his motivation to induce [the defendant] to deliver controlled substances would be relevant" and not excluded by the hearsay rule. Spears, 264 Ark. at 92, 568 S.W.2d at 499. Here also, the purpose of the government informant's conduct and communications was a proper matter to be brought before the jury and was erroneously excluded. This error cannot be considered harmless in light of the strong evidence of government involvement and persistence in this case.
We do not think it appropriate at this time for this Court to decide as a matter of law whether Morris was entrapped. We quash the decision of the district court and remand with directions to remand to the trial court for proceedings consistent with this opinion.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON and SHAW, JJ., concur.
McDONALD, J., concurs specially with an opinion.
EHRLICH, J., dissents.
McDONALD, Justice, specially concurring.
I concur with the reversal of this conviction because it was reversible error to exclude the testimony of Eugene Gotbaum. I would go further, however, and state that the evidence does not support the claim of Morris that as a matter of law he was entrapped.
NOTES
[*] According to Morris's testimony, Donaldson had supplied him with the sample.