James K. RIDDLING v. STATE of Arkansas

CA CR 86-23                                    719 S.W.2d 1

Court of Appeals of Arkansas
En Banc
Opinion delivered November 12, 1986

*John W. Leach* and *Wayne Emmons*, for appellant; Of Counsel: *Wilson, McRae, Ivy, Sevier, McTyier* and *Strain*.

*Steve Clark*, Att'y Gen., by: *Joel O. Huggins*, Asst. Att'y Gen., for appellee.

MELVIN MAYFIELD, Judge. The appellant was convicted of selling a controlled substance, cocaine, and sentenced to ten years in the Arkansas Department of Correction. The case was tried twice, with the first trial resulting in a hung jury. We set out the following factual summary taken from the combined evidence of both trials.

During the summer and fall of 1983, undercover operations were conducted by the Arkansas State Police with regard to narcotic traffic in Crittenden County, Arkansas. The investigation was made in cooperation with the West Memphis Police Department. During the investigation, an individual was arrested who provided information and assisted in the investigation of another individual named Troy Powers. As a result, Powers and his girlfriend, who later became his wife, were arrested and charged with the sale of marijuana.

Powers agreed to become a confidential informer and there is testimony that he was "developed" by Officer Carter of the West Memphis Police Department and later "passed" to John Brackin, who was a criminal investigator with the Arkansas State Police. In August of 1983, at Brackin's direction, Powers purchased cocaine from an individual named Gene Guin. The following day,

Powers had a conversation with the appellant in the Crittenden County Courthouse and was told that appellant knew he had purchased the cocaine from Guin. Powers told Trooper Brackin about this conversation and there is evidence that about this point in time the investigation of the officers had begun to focus on one Larry Rogers.

After the conversation between appellant and Troy Powers, whom appellant had known for many years, Powers began to build upon his relationship with appellant. Powers told appellant that he was being pursued by the internal revenue department and his ex-wife for money, that he was in bad financial shape, had a heart condition, and was trying to get a construction contract that could literally make or break him. He told the appellant that in order to cinch the construction contract he had to get some cocaine to give to the person in charge of approving the contract. Eventually, the appellant agreed to provide cocaine for Powers and his business associate, who was, in fact, Sergeant Larry Gleghorn of the Arkansas State Police, and the exchange of cocaine was made on September 2, 1983.

On October 5, 1983, the appellant received a telephone call from Lt. Jim Presley of the West Memphis Police Department requesting that he come to the police department to look at some property. This was admittedly a ruse and when the appellant arrived he was greeted by Lt. Presley, Trooper Brackin, and Officer Stevens of the Crittenden County Sheriff's Office and appellant was requested to sit down and view a video tape of the transaction of September 2, 1983.

Following the playing of the tape, appellant was informed that if he cooperated he (according to his version) would not be prosecuted but otherwise he would get 40 years to life. Appellant testified that he inquired about an attorney but was dissuaded from seeking legal advice and that he cooperated at that time with the police to the extent that he made a telephone call to Larry Rogers and arranged a narcotic purchase from him. The appellant also testified that he was allowed to leave with instructions to come back the next day to follow up on the transaction and that night he talked to an attorney and was told that immunity could not be arranged by the police officers but would have to be arranged by the prosecuting attorney. So, the next day, according

to appellant, he notified Sergeant Presley that he wanted an attorney to discuss with the police officers the offer of immunity and to advise him of his rights in that regard. The appellant testified that Presley advised him that a certain West Memphis attorney could be arranged for him if he would come to the police headquarters but, since this attorney was not familiar to the appellant, this offer was declined. Appellant said that he suggested another attorney but Presley said he would be arrested if he did not come to the police headquarters immediately. Appellant did not go to the police headquarters and he was subsequently arrested, tried, and convicted.

Appellant's main defense was entrapment. However, during the second trial the court would not allow appellant to introduce evidence of events that occurred after the transaction on September 2, 1983, when he sold the cocaine to the undercover agent, Sergeant Gleghorn. It was the appellant's contention that events after the September 2 transaction were admissible to show the entire scheme of things. He contended that this evidence would help establish his defense of entrapment by showing that the law enforcement officers desired to have him help them catch "bigger fish," to wit, Larry Rogers, and when he refused to help them in this regard, he was prosecuted for the September 2 transaction. The trial court explained that he had admitted the evidence in the first trial but was now convinced that it was not proper. As a result of the court's ruling, it was agreed that the evidence of the first trial relating to the events that occurred after September 2, 1983, which the appellant desired to proffer as proof on the issue of entrapment, could be made a part of the record.

We think this evidence was admissible and that the trial court erred in refusing to allow it to be introduced at the second trial. Ark. Stat. Ann. § 41-209 (Repl. 1977) provides as follows:

(1) It is an affirmative defense that the defendant was entrapped into committing an offense.

(2) Entrapment occurs when a law enforcement officer or any person acting in cooperation with him, induces the commission of an offense by using persuasion or other means likely to cause normally law-abiding persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not

constitute an entrapment.

In *Spears* v. *State*, 264 Ark. 83, 568 S.W.2d 492 (1978), the court said that under the provisions of the above statute:

> Primary importance is accorded to the conduct of a law enforcement officer, or the person acting in cooperation with him. . . . Any evidence having any tendency to make the existence of entrapment more probable is admissible. . . . The accused should be allowed a reasonable latitude in presenting whatever facts and circumstances he claims constitute an entrapment, subject to ordinary rules of admissibility.

264 Ark. at 92.

In the instant case, although the court did admit testimony by Officer Carter and Trooper Brackin that the decision to "induce" appellant to provide cocaine for the undercover man was the product of a joint discussion between them and Powers, the court's ruling excluded evidence from which the jury could find that after the police officers video taped the September 2, 1983, sale they called the appellant to come view that taped occurrence and that they then suggested that he cooperate with them to help them catch "bigger fish" and that his failure to so cooperate would get him 40 years, but if he did cooperate, he would not be prosecuted. The court's ruling also eliminated the testimony, given in the first trial by Trooper John Brackin, that on October 5, 1983, when the appellant was called to view the taped occurrence of September 2, Brackin wanted the appellant to arrange a purchase from Rogers because Gene Guin had left the jurisdiction, and that a case was not made against Rogers until after the arrangements with the appellant fell through on October 5, 1983, and they finally found Guin and got him to make a purchase from Rogers. All of the above evidence, we believe, was admissible on the appellant's defense of entrapment.

The trial court was very generous in allowing the appellant to make a proffer of proof of all the testimony in the first trial that appellant thought was admissible on his defense of entrapment, and we do not hold that all of the evidence of events that occurred after September 2, 1983, are necessarily admissible

on retrial. We do hold, however, that the trial court unduly limited the appellant's evidence on his entrapment defense by refusing to let him show *any* evidence of events that occurred after September 2, 1983. In this connection, we call attention to the commentary to Ark. Stat. Ann. § 41-209, *supra*, which states that the statute attributes more importance to the conduct of the law enforcement officer than to any predisposition of the defendant and that the obvious purpose is to discourage governmental activity that might induce innocent persons to engage in criminal conduct. Here, the thrust of the appellant's defense of entrapment is that the police have selected him, and caused an informant of theirs to persuade him to sell the informant cocaine in violation of the law, so that he can be used by the police, under threat of prosecution, to make purchases from "bigger fish" that the police are after. The jury is entitled to hear this evidence in considering the issue of whether appellant has been entrapped.

■ The appellant also contends that the trial court should have granted his motion for directed verdict made at the conclusion of the State's evidence in the first trial. Apparently, he would have us reverse and dismiss the charges against him, even after the second trial, because he was entitled to that relief in the first trial. Suffice it to say, we are cited no authority for this novel contention and, in addition, we do not agree that he was entitled to that relief in the first trial. Appellant's argument is based upon the contention that his defense of entrapment was established as a matter of law. Entrapment, however, is ordinarily a fact question, *Walls* v. *State*, 280 Ark. 291, 658 S.W.2d 362 (1983), and we think the evidence in the first trial presented a factual question on that issue.

■ It is also argued that members of the city police department, the county sheriff's office, and the state police department promised that the charges against appellant would be dismissed if he cooperated in helping them to catch "bigger fish" who were engaged in narcotic traffic in Crittenden County and that it would be unconscionable not to enforce the agreement made. *Cooper* v. *U.S.*, 594 F.2d 12 (4th Cir. 1979), and cases from the states of Iowa, Washington and Maryland are cited in support of this proposition. In *Hammers* v. *State*, 263 Ark. 378, 565 S.W.2d 406 (1978), the Arkansas Supreme Court reversed a conviction and dismissed the charge when it held the *record*

*established* that the defendant in that case had an agreement with the State for immunity from prosecution. But, in the instant case, the record does not *establish* that the appellant had an agreement that he would not be prosecuted if he cooperated with the police. To the contrary, the law enforcement officers testified that they made no such promise. There is authority that "the police in their own right do not have authority to commit the state to anything by way of declining to prosecute," *Butler* v. *State*, 462 A.2d 1230, 1233 (Md. Ct. Spec. App. 1983), but in any event, whether such an agreement has been made is a question of fact. We cannot say the trial court's decision on that point was "clearly against the preponderance of the evidence." *See Hammers* v. *State*, 261 Ark. 585, 603, 550 S.W.2d 432 (1977) (the remand which gave rise to the second opinion in *Hammers* v. *State*, 263 Ark. 378, 565 S.W.2d 406, *supra*).

■ Another contention is that the prosecutor made improper and prejudicial remarks to the jury during closing argument; however, there was no objection to these remarks at the time and the point cannot be raised for the first time on appeal. *Wicks* v. *State*, 270 Ark. 781, 606 S.W.2d 366 (1980).

■ The appellant also argues that a video tape of a meeting between Powers and appellant on August 24, 1983, was inadmissible in the State's case in chief because its only relevance was to show predisposition to sell a controlled substance and this evidence would only be admissible in rebuttal to appellant's defense of entrapment. We do not agree. Unlike the case of *Spears* v. *State*, *supra*, relied upon by appellant for this point, in the instant case, there was evidence of entrapment in the State's evidence in chief, therefore, evidence of predisposition was also admissible during the presentation of the State's case in chief.

Appellant's last two points for reversal deal with the trial court's refusal to grant him a continuance of the second trial, and the refusal to grant his motion for mistrial because a potential juror indicated during voir dire that he had a preconceived opinion about the case. Since neither matter is likely to arise again on retrial, we see no reason to discuss these points. For the error in refusing to admit the evidence which we have discussed, this case is reversed and remanded for a new trial.

WRIGHT, Special Judge, agrees.

GLAZE, J., not participating.