Cite as 2022 Ark. App. 191

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CR-21-497

| | | |
|---|---|---|
| JEFFREY HAYNES | | Opinion Delivered May 4, 2022 |
| | APPELLANT | |
| | | APPEAL FROM THE FRANKLIN COUNTY CIRCUIT COURT, NORTHERN DISTRICT |
| V. | | [NO. 24OCR-18-210] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE JAMES DUNHAM, JUDGE |
| | | AFFIRMED |

**RAYMOND R. ABRAMSON, Judge**

Jeffrey Haynes appeals his conviction of possession of methamphetamine with the purpose to deliver from the Franklin County Circuit Court. On appeal, he argues that the circuit court abused its discretion by refusing to instruct the jury on entrapment. We affirm.

On November 13, 2018, the State charged Haynes with possession of methamphetamine with the purpose to deliver. The State later amended the information to charge Haynes as a habitual offender. The court set a jury trial for July 15 and 16, and it ordered the parties to submit proposed jury instructions fourteen days prior to the trial date.

At trial, Mike Hamilton testified that he works for the drug task force and that he received information that Haynes, who is an attorney, was a possible suspect. He stated that

he arranged for an informant to trade methamphetamine with Haynes for legal services in a controlled buy.

Hamilton then explained the details of the controlled buy. He stated that he reserved two motel rooms—one room for the confidential informant to meet Haynes and a second room for drug-task-force officers. He stated that he gave the informant a bag of methamphetamine to give to Haynes and that he placed drug paraphernalia and counterfeit methamphetamine inside the informant's motel room to suggest drug activity. Hamilton testified that Haynes entered the informant's motel room and that he was in the room for "just a few minutes." He stated that after Haynes left the room, he approached Haynes at his car, arrested him, and located the bag of methamphetamine in his pocket.

Hamilton testified that after the arrest, he interviewed Haynes. He recorded the interview, and the court played the recording for the jury. In the recording, Haynes initially stated that he told the informant on several occasions that he could not accept noncash payments for legal services; however, Haynes eventually acknowledged that he met the informant to retrieve methamphetamine. He also admitted that he wanted to "[t]ry to get some money" for the methamphetamine, and he referenced the individual to whom he planned to sell the methamphetamine. He said that he was in a "bad spot" and that several other clients owed him money. He denied accepting drugs for payment in the past, but he eventually admitted that he had done so "[a] long time ago." Haynes also admitted that he used "dope every once in a while," but he denied being under the influence of drugs during the interview.

2

At trial, Hamilton testified that Haynes's demeanor during the interview—he was itching and in constant motion—made him suspect that Haynes had probably used drugs that morning.

The informant testified that contrary to Haynes's recorded statement, Haynes did not insist on money instead of methamphetamine. He explained that when he first met Haynes at his law office to discuss his criminal case, Haynes abruptly ended the meeting when he saw on the informant's criminal record that the informant had been released on a signature bond. The informant explained that a person is generally given a signature bond when he is sick or "working with the police."

The informant testified that he later contacted Haynes for assistance with his girlfriend's child-custody case and that Haynes agreed to exchange methamphetamine for legal services. He explained that drug-task-force officer Hamilton then formulated the plan for the controlled buy. He stated that Hamilton provided him the bag of methamphetamine and that he delivered the methamphetamine to Haynes at the motel. The informant testified that

> [Haynes] came in. I got the dope out from under the mattress, and we walked over. I kind of sat on the counter there where the mirror is at. We had a few words. I handed it to him. He asked what it was. I told him what the quantity was. I mentioned that, you know, further involved in the case, I had some more if we needed to; and he said right now that would be plenty.

Mike Evans, a drug-task-force officer, testified that he accompanied the informant inside the motel room for the controlled buy. He stated that he saw the informant give the bag of methamphetamine to Haynes and that Haynes put it in his pocket. He further stated

that Haynes and the informant briefly discussed the custody case, and Haynes then exited the motel room. Evans testified that Haynes did not mention cash and did not refuse the drugs.

After the State rested, Haynes testified on his own behalf that he is an attorney and that he previously had his own law practice.[1] He stated that he developed financial issues because his clients failed to pay legal fees. He also stated that he suffers from health issues. He explained that the informant had requested legal services and that he had told the informant that he accepted only cash for payment. Haynes testified that on several occasions, the informant asked him about trading noncash items for legal services, but Haynes always said no. Haynes denied discussing methamphetamine with the informant.

As to the motel incident, Haynes testified that he met the informant because the informant said that he had cash to pay his legal fees. He further explained that on that day, he needed money to see a doctor for a foot infection, that he was in immense pain from the infection, and that when the informant offered him methamphetamine, he accepted it "in a stupid moment."

At trial, Haynes asked the court to instruct the jury on entrapment. He argued that the evidence showed that law enforcement induced him to take the methamphetamine through the informant's repeated requests to accept noncash payments. He also claimed that the informant lured him to the motel room by promising a cash payment.

---

[1]Haynes stated that his law office had been closed and that his law license had been suspended.

The court refused to instruct the jury on entrapment. The court stated, "You haven't offered an actual instruction, but and in terms of a written one. But in any event, I do not find that there is any evidence from which the jury could find that." Thereafter, Haynes proffered an entrapment instruction.

The jury found Haynes guilty of possession of methamphetamine with the purpose to deliver. Haynes was also found to be a habitual offender. He was sentenced to ten years in the Arkansas Department of Correction. This appeal followed.

On appeal, Haynes argues that the circuit court abused its discretion by refusing to instruct the jury on entrapment. The circuit court's decision to give or reject an instruction will not be reversed unless the court abused its discretion. *Hundley v. State*, 2020 Ark. 89, 594 S.W.3d 60. When there is no evidence to support the giving of an instruction, it is not error to refuse it. *Blaney v. State*, 280 Ark. 253, 657 S.W.2d 531 (1983).

Entrapment is an affirmative defense that "occurs when a law enforcement officer or any person acting in cooperation with a law enforcement officer induces the commission of an offense by using persuasion or other means likely to cause a normally law-abiding person to commit the offense." Ark. Code Ann. § 5-2-209(b)(1) (Repl. 2013). "Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment." Ark. Code Ann. § 5-2-209(b)(2). A defendant bears the burden of proving entrapment by a preponderance of the evidence. *Smoak v. State*, 2011 Ark. 529, 385 S.W.3d 257.

When deciding whether a person was entrapped as a matter of law, the supreme court has stated that

more importance [is attributed] to the conduct of the law enforcement officers [and any people acting in cooperation with them] than to any predisposition of the defendant and the question is directed to the effect of that conduct on "normally law-abiding persons."

*Baker v. State*, 310 Ark. 485, 487, 837 S.W.2d 471, 472 (1992) (citing *Spears v. State*, 264 Ark. 83, 96, 568 S.W.2d 492, 501 (1978)). But the supreme court has also said that the

defendant's conduct and predisposition, both prior to and concurrent with, the transactions forming the basis of the charges are still material and relevant, on the question whether the government agents only afforded the opportunity to commit the offenses with which he is charged.

*Baker*, 310 Ark. at 487–88, 837 S.W.2d at 472 (citing *Spears*, 264 Ark. at 97, 568 S.W.2d at 501 (citations omitted)).

In *Baker*, the supreme court held that a circuit court did not abuse its discretion by not instructing the jury on entrapment in a controlled-buy situation. 310 Ark. 485, 837 S.W.2d 471. The evidence showed that an informant had called the appellant on more than one occasion requesting cocaine and that the appellant had initially told the informant that "he never got any cocaine and did not know of anybody that had any to sell." *Id.* at 489, 837 S.W.2d at 473. The supreme court explained that

[t]he informant's behavior in asking appellant if he could get some cocaine and calling him several times about getting cocaine, without more, is not enough to raise a fact question as to entrapment, especially coupled with appellant's testimony that he had sold cocaine to the informant in the past and that he was willing to sell marijuana and mushrooms to the informant. Appellant, having the burden of proof, failed to present any evidence to indicate that he was induced by governmental conduct of a character likely to cause a normally law-abiding person to commit the offense.

*Id.* at 489, 837 S.W.2d at 472–73.

We find *Baker* instructive and hold that the circuit court did not abuse its direction by refusing to instruct the jury on entrapment in this case. Similar to the testimony in *Baker*, Haynes's testimony about the informant's actions is not enough to raise a factual question as to entrapment—especially given Haynes's admission that he had used "dope," that he had accepted drugs for legal fees "[a] long time ago," and that he had planned to exchange the methamphetamine for money. Haynes, having the burden of proof, failed to present evidence to indicate that he was induced by governmental conduct of a character likely to cause a normally law-abiding person to commit the offense. Thus, we hold that the circuit court did not abuse its discretion by refusing to instruct the jury on entrapment.

Affirmed.

HARRISON, C.J., and GRUBER, J., agree.

*Terry Goodwin Jones*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Walker K. Hawkins*, Ass't Att'y Gen., for appellee.