JOHNNY FIGHT *v.* STATE OF ARKANSAS

CR 73-44                                    497 S.W. 2d 262

Opinion delivered July 16, 1973

*Don Langston* and *Hubert Graves,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *James A. Banks,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Appellant, Johnny Fight, was charged by Information with delivery of a controlled substance, a violation of Act No. 590 of 1971 (Ark. Stat. Ann. §§ 82-2601—38 (Supp. 1971). In *Bennett v. State,* 252 Ark. 128, 477 S.W. 2d 497, this court held that this offense constituted a misdemeanor, rather than a felony. On trial, the jury found Fight guilty and assessed his punishment at imprisonment in the county jail for a period of one year, together with a fine of $250.00. From the judgment so entered, appellant brings this appeal. Three points are asserted for reversal as follows:

I.

"The Court's comment to prospective jurors that the Controlled Substance Act was a felony until the Supreme Court passed on it; that the Court felt the Supreme Court was wrong; that anyone who violated the act, during that time, no matter what the circumstances, could only be convicted of a misdemeanor; and that the legislature subsequently met properly and made such offenses felonies, was error.

II.

"The Court erred in allowing the State to introduce in evidence a sample of a controlled substance, purported to be that purchased from the defendant, when the State failed to offer evidence of the complete chain of possession of the sample from the time of its alleged purchase until the time it was offered in evidence.

III.

"The Court erred in refusing to give Defendant's Requested Instruction on Entrapment and in instructing the jury on its own motion that entrapment was not an issue."

We proceed to discuss these contentions in the order listed.

I.

At the outset, the circuit judge made certain remarks to the jury panel, portions pertinent to appellant's argument, being as follows:

"We're down to the last two cases on these what I'll call drug cases that were scheduled for trial over this two week period. Two of them are scheduled for trial today. There's one thing I might explain to you. I think that most of you are aware due to what you've read in the newspapers and also what I've told you about this situation. The first comprehensive controlled substances drug act, Act 590 of 1971, was passed

by the 1971 Legislature when they were in session in the first part of that year and it was the law all through '71 and up until *** March of '72 when the Supreme Court passed on that '71 Act and said that due to the wording of it that no matter, even though it was the sale of real hard drugs and that sort of thing, that the wording of the Act was such that it can be construed only as a misdemeanor. I think I can explain this briefly to you how they reached this conclusion."

The court then explained that since the act did not specifically provide that the offense was a felony, and did not provide that punishment was imprisonment in the penitentiary, the Supreme Court had held that violation of the provisions was only a misdemeanor. Further,

"Well, my feeling was this was splitting hairs and was not important, but that became the law and it was retroactive, so to speak, and anyone who had committed an offense during this period of '71 and up till March, no matter what they had done, for that matter, if it involved a narcotic then it would be only a misdemeanor punishable by, in my interpretation, up to a year in the county jail and a fine of $300.00 [$250.00]. The legislature met properly after that and passed this new act which has been the law since the first part of this year right after—at the time the Supreme Court acted. We now have a law which is clear and we know what it means. [1] You've heard these cases that have been brought before you and the one case you all tried involved a felony and that's one in which you recall you sentenced a man to ten years in the penitentiary and his fine. *** Both of the cases that are set for trial today are cases which occurred back before this act was amended and although they—I believe they're charged with delivery of a controlled substance, will be the first charge we'll hear. Since it happened back in 1971, it is a misdemeanor and you will be told that it is punishable only by a year's—a year's imprisonment and a $250.00 fine.

---

[1] The General Assembly in the Extraordinary Session of 1972, enacted legislation which became Act 67 of 1972, classifying the offense as a felony, punishable by imprisonment in the state penitentiary.

I'm going into this so you'll understand the distinction between the law as it once was then, as it was back in June, '71, and as it is now. Otherwise, it might be confusing to you and the person on trial."

Subsequently, after a discussion about selection of the jury, Fight's attorney approached the bench, out of the hearing of the jury, and stated:

"Your Honor, I think that this background information on this misdemeanor has prejudiced our client and I therefore move for a mistrial or a continuance."

This motion was denied, and the denial is the basis for the first asserted error.

While some of the remarks of the court probably should not have been made, we cannot agree that prejudicial error was committed. One case, involving the violation of the controlled substances act, had already been tried by jurors of this jury panel, such case being prosecuted under the provisions of the legislative act passed by the General Assembly, and approved by the Governor on March 6, 1972. This act provided that such violations constituted a felony, punishable by imprisonment in the state penitentiary for a period of not more than ten years and a fine of not more than $15,000, or both. Fight's offense occurred under the previous act (Act. No. 590 of 1971), which this court held in *Bennett v. State, supra*, to be only a misdemeanor. It was certainly in order for the court to explain to the jury panel why the punishment in the case already tried provided incarceration in the state penitentiary, being a felony, and the case against Fight, for a similar offense, was only a misdemeanor.[2] We find no

---

[2]It will be noted that the court advised the jury that the punishment for the misdemeanor was imprisonment in the county jail up to one year and a fine up to $250.00. This is in accordance with the provisions of Ark. Stat. Ann. § 41-106 (Repl. 1964), a "catch-all" statute, which provides this punishment for all misdemeanors committed where the statute relative to particular offenses does not provide a specific penalty. The question is not involved on this appeal, but there is no language in *Bennett v. State, supra,* or a companion case, *State v. Cosentino,* 252 Ark. 68, 477 S.W. 2d 460, handed down on the same date, which indicates that the penalty provided in Act No. 590 was invalid. The question is not before us on this appeal and, of course, Fight would not be in a position to complain since the penalty statute under which he was tried is much less than that provided in Act No. 590.

remarks by the court that would justify the declaring of a mistrial, and no request was made by counsel for an admonishment to the jury.[3]

## II.

Officer Frank Hartman, employed by the Fort Smith Police Department at the time of the alleged occurrence, as an under-cover officer, purchased the LSD[4] from Fight, the purchase taking place at the Four Seasons Club. Subsequent to leaving the club, Hartman took the tablet, placed it in a white envelope, signed the envelope, showing the date, the time it was sealed, the contents of the envelope, where he bought the tablet, who he bought it from, and how much he paid for it. He testified that after the envelope was sealed, he turned it over to Detective Bill Reather of the Narcotics Division, Fort Smith Police Department. Reather testified that he made a notation on it at the time he received it, noting the date, and either writing his name or initialing the envelope, and the next day turned it over to Sergeant Arthur Langston to be mailed to Mrs. Marguerite Van Dusen, a chemist for the Arkansas State Department of Health. Sergeant Langston did not testify but Mrs. Van Dusen testified that she received a package (large brown envelope) from the Fort Smith Police Department on August 24, 1971, the package being sent by certified mail, and containing two smaller white envelopes. The smaller envelopes were marked "1" and "2", noting each subject's name. Number 2 bore the name of Johnny Fight. She stated that this envelope contained one small orange tablet which she determined contained LSD. Appellant objected to the introduction of the envelope and the tablet, contending that the State had failed to complete the chain of possession from the time of the purchase until the time that the envelope and tablet were introduced, this argument having reference principally to the fact that Langston did not testify. It is also mentioned that a Mr. Mosher, who had charge of the

---

[3]The fact that defense counsel did not move for a mistrial until after other matters had been taken up is somewhat indicative of the fact that the court's remarks were not so flagrant as to immediately denote prejudice, and it was only upon reflection, after intervening events, that counsel made his motion.

[4]This was referred to during the trial as "Orange Sunshine", the tablet being orange in color.

mail at the Department of Health, had delivered this package to Mrs. Van Dusen, and Mosher did not testify. It is further mentioned that Hartman turned the envelope over to Reather on June 30, but that it was not received by Mrs. Van Dusen until August 24[5]; that for these reasons the State should not have been allowed to introduce these exhibits.

We do not agree. Both Officer Hartman and Detective Reather again took the stand and testified that the Fight envelope bore the markings placed by them, and Mrs. Van Dusen stated that it was sealed when delivered to her; she opened the envelope on the end and it was still sealed at the flap at the time of the trial. The record does not reflect why Sergeant Langston did not testify but we think, under the circumstances herein, that the evidence was admissible. According to the testimony of the officers, the envelope, clearly identifiable since they had placed notations upon it, was the same in which the tablet containing LSD had been placed, and Mrs. Van Dusen likewise identified this envelope as being the one from which the tablet was taken. The purpose of the chain of identification is to prevent the introduction of evidence which is not authentic. The fact that the envelope was delivered to Mrs. Van Dusen by the Health Department official in charge of the mail is not really argued, only mentioned, and certainly there is no suggestion that either this official or Sergeant Langston had tampered with the envelope. Nor does the delay in getting the tablet to Mrs. Van Dusen render the evidence inadmissible. The court held the evidence admissible, but told the members of the jury that it was up to them to decide whether Officer Langston eventually placed in the mails the same substance that was given to him. The jury heard the testimony of all the witnesses, specifically noted the time lapse as shown by a question asked by a juror, and was told by the court that the delay was a circumstance to be considered. In *Coca-Cola Bottling Company* v. *Davidson,* 193 Ark. 825, 102 S.W. 2d 833, a Coca-Cola bottle containing the remains of the

[5]There appears to be some confusion about the date since it is referred to in the State's brief as twenty-four days, and counsel for appellant, in making his objection to the introduction of the tablet containing LSD, mentioned that there was a time lapse of almost a month. However, we accept the dates of June 30 and August 24.

contents after the plaintiff had drunk therefrom, and allegedly containing foreign matter, was admitted into evidence over the objection of the company who asserted that it was not in the same condition when offered into evidence as at the time it was purchased. We said:

"There is no suggestion, hint or word of testimony that it was different at the time it was offered in testimony from what it was at the time it was sold, except such effects as may have been caused by time or age in the interval before the time of the trial. If that made any difference, the difference was brought about by natural processes, such as the court and jury, or other reasonable persons, would necessarily have deemed usual or natural under the conditions and circumstances and there is no word or hint of any evidence to the effect that the condition that then existed at the time of the trial tended in any manner to prejudice the rights of the appellant. ***

"We are not saying that any natural force will in all particulars be disregarded and objects about which the controversy may have arisen be in every case competent, but we do say that so long as delay, or even changed conditions by reason of delay *do not destroy the evidentiary factor* [our emphasis], it is not improper to make it an exhibit."

In *Freeman* v. *State*, 238 Ark. 804, 385 S.W. 2d 156, Freeman was convicted of second degree murder. Appellant testified that he only fired one time in self-defense at the victim of the shooting, while the State contended that three shots were fired. J. F. Jackson witnessed the shooting, and ran over and picked the gun up off the floor. He put the gun into his pocket and forgot it at the time, but on the next day examined it, finding two live rounds of ammunition and three empty cartridges. Jackson then testified that he took the pistol to his attorney and the latter subsequently turned it over to the deputy prosecuting attorney. Jackson testified at the trial that he could not positively say that the bullets shown him were the ones taken from the gun. The attorney, to whom Jackson had delivered the gun, and who had in turn given it to the deputy prosecuting attorney, testified that to the best of

his knowledge, there were three *unexploded* shells and two shells which had been exploded (a variance, of course, from the testimony of Jackson). The deputy prosecuting attorney testified that the gun was given to him but that he did not examine it and thereafter delivered it to a deputy sheriff, who removed the bullets in his presence. On trial, he said that three had been fired and two were "live"; and he testified that they resembled the bullets which had been taken from the pistol but stated that no identifying marks were placed on them in his presence. The three empty cartridges, along with a bullet taken from the body, were offered in evidence, and these cartridges had never been marked for identification until they reached Captain McDonald of the state police. On appeal, it was here contended that it was not established that the shell and empties introduced in evidence were the same ones in the gun at the time of the shooting. This court held that there was no reversible error in allowing the three empty shells to be introduced, stating, "They were found in appellant's gun soon after the shooting, and *there was no evidence to show the gun was tampered with in the meantime."* (Our emphasis).

We hold the contention to be without merit.

### III.

This asserted error is based on the fact that Officer Hartman made the approach to Fight, instead of Fight approaching him, with reference to the LSD sale. Officer Hartman testified that he had gone to the Four Seasons with an informer named Arby Ray Blevins. While they were playing pool, appellant came over and spoke to them (apparently knowing Blevins) and subsequently Hartman and Blevins sat down in a booth and Fight walked over. Hartman stated that, after some conversation, he asked if Fight had some LSD for sale, and was answered in the affirmative; that the price was $2.75 per "hit" and Hartman told appellant that he wanted two "hits"; that he walked over to the bar to obtain change for a twenty dollar bill, Fight having stated that he did not have change. Hartman said:

> "I was watching them and I noticed Mr. Fight come across from his shirt pocket just as I turned around. I

noticed his hand and Mr. Arby Ray Blevins hand come together in a giving and taking motion. At this time Mr. Blevins then put his hands back down on the table in a normal manner. When I received the change I went back and sat down at the table and Mr. Blevins handed me an orange tablet. I then handed Mr. Fight the five dollar bill and two quarters in a concealing type manner across the table." [5]

The officer stated that Fight took the money and put it in his pocket.

Appellant argues that he was entitled to an instruction on entrapment. We do not agree. Appellant entered a plea of not guilty to the charge of delivering a controlled substance. Though on *voir dire*, the jury was interrogated relative to such a defense, no evidence was offered in support of this defense; in fact, appellant presented no evidence whatsoever.

Fight was not entitled to the instruction. In our most recent case on this subject, *Leverich* v. *State*, 249 Ark. 650, 460 S.W. 2d 317 (1970), in holding that the evidence was devoid of any of the essentials of entrapment, we quoted *Peters* v. *State*, 248 Ark. 134, 450 S.W. 2d 276, as follows:

... ' "As Judge Lemley said in the *Hughey* case, affording one the means and opportunity of doing that which he is otherwise ready, willing and able to do does not constitute entrapment. Entrapment does exist where the criminal designs originate not with the accused, but with the officers of the law, and the accused is lured into the commission of an unlawful act by persuasion, deceitful representation or inducement by the officers.' "

In *Brown* v. *State*, 248 Ark. 561, 453 S.W. 2d 50, we pointed out that the entrapment is an affirmative defense, and it was mentioned that there was no evidence offered to establish that the person who was contacted relative to obtaining marijuana "was deceitfully persuaded to do anything more than he was already willing to do." .

---

[6] The other tablet was retained by Blevins.

See also 21 Am Jur. 2d § 144, p. 214, where it is pointed out that the invoking of the defense of entrapment necessarily assumes that the act charged was committed.

It follows, from what has been said, that we find no prejudicial error, and the judgment is accordingly affirmed.

It is so ordered.