Billy Joe ROBINSON *v.* STATE of Arkansas

CR 73-135                          503 S.W. 2d 883

Opinion delivered January 21, 1974

*Harold L. Hall,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Alston Jennings, Jr.,* Asst. Atty. Gen., for appellee.

J. Fred Jones, Justice. Billy Joe Robinson was convicted at a jury trial for selling cocaine and sentenced to 20 years in the penitentiary. Detective Bob Anderson purchased the cocaine from Robinson and his testimony at the trial resulted in Robinson's conviction. On appeal to this court Robinson contends as follows:

> "The court erred in ruling that the officer could testify that he made purchases on prior visits to defendant's home before defendant completed his examination of the officer."

We find no merit to this contention on the record now before us.

The felony information charged Robinson with the crime of violating the Arkansas Uniform Controlled Sub-

stances Act by unlawfully delivering a controlled substance to wit: Cocaine, against the peace and dignity of the State of Arkansas. Robinson entered a plea of not guilty. Bob Anderson, a detective in the narcotics division of the Little Rock Police Department, testified on direct examination that on January 18, 1973, he went to the appellant's apartment and there purchased a quantity of substance he believed to be cocaine from Billy Joe Robinson. He said he had been to the same address before, but that on January 18, he arrived at the address at approximately 8:15 p.m., knocked on the door and was admitted by Robinson. He said another male individual, whom he did not know, was in the apartment with Robinson at that time. He said he asked Robinson if he had any cocaine to sell and that Robinson answered in the affirmative and inquired as to how much he wanted. He said he told Robinson he wanted a $50 spoon of cocaine, whereupon, Robinson left the living room but returned within a few minutes and handed him the substance wrapped in aluminum foil. He said he stepped into the kitchen and examined the substance under a better light and that the substance appeared to be cocaine. He said he paid Robinson $50 for the substance and left the apartment. He said he drove directly to the narcotics division of the police department and that the substance he purchased was positively identified as cocaine.

On cross-examination Detective Anderson testified that he first met Robinson in the latter part of 1972 at Robinson's apartment. The defense attorney then inquired as to whether anyone accompanied the officer when he first went to Robinson's apartment and met him. The state's attorney objected to the relevancy of the testimony as to who accompanied Detective Anderson and the record then appears as follows:

"THE COURT: What's the purpose of this testimony, Mr. Hall?

MR. HALL: If the Court please, I want to show that he has been to see this defendant several times before at different places and it has been kept on until the

date of this arrest; that he induced and entrapped him to get him some. He has been asking to get him some drugs for some period of time.

THE COURT: All right, go ahead."

And, at this point, the state's attorney requested an in-chambers hearing which was granted.

At the in-chambers hearing the state's attorney stated that the state took the position there was no issue of entrapment involved in the case, but that the defendant was raising the issue of entrapment making an in-chambers hearing necessary to "determine whether or not to proceed in that area and it is up to the Court to determine whether a prima facie case of entrapment is established before it goes to the jury."

The trial judge inquired as to what was going to be the problem with the testimony and pointed out that the witness had only been asked when he had previously gone to the residence of the defendant. The state's attorney pointed out to the court that the defendant had subpoenaed a witness under the alias name "G. Blue"; that the defense attorney had raised the issue of entrapment and he anticipated the defense witness, G. Blue, would testify he introduced Officer Anderson to Robinson several months prior to January 18, in an effort to trap Robinson into selling or delivering cocaine. The state's attorney argued in chambers, that from the preliminary questions directed to Officer Anderson on cross-examination, the defense was laying a foundation for the introduction of G. Blue's testimony bearing on entrapment, and that the state was entitled to an in-chambers hearing to determine whether or not entrapment was a valid issue. The trial court then ruled as follows:

"Well, let's have it then. I don't think he has raised it yet but let's have it anyway."

Whereupon, in chambers, Officer Anderson testified under questioning by the state's attorney, that in December, 1972, he received information that Robinson

was engaged in the business of selling and dealing in narcotics. He said that the very first time he ever went to Robinson's apartment, G. Blue took him there, and that was the only time G. Blue ever went with him to the Robinson apartment. He said that after he was introduced to Robinson by G. Blue, that Robinson took him to a small utility room off the kitchen in the apartment where he purchased from Robinson a bag of green vegetable material which was later found by chemical analysis to be marijuana. He said he subsequently made two other purchases of marijuana from Robinson. He said that G. Blue had no other connection with the matter except to introduce him to Robinson upon his first contact. At this point the record is as follows:

"THE COURT: Well, just a minute now. What else did G. Blue have to do with your relations?

A. Not a thing.

THE COURT: If he wants to testify to that, well, then, I don't see why he shouldn't. If you want him to get up there and say he went in there and bought marijuana three different times from him or whatever he bought from him, well, I will let you do that, Mr. Hall.

MR. HALL: I have a right to ask him when he first went over, how many times he had been there, who was with him. I don't have to ask him if he bought anything. I asked him how many times he had been there.

THE COURT: Well, now, if you're going to try to show entrapment, that he went over there to persuade this man to, to sell, then you're going to have to, you're going, he's entitled to state the—

MR. MUNSON: (Interposing) That's right.

THE COURT: What happened after he got there.

MR. MUNSON: That's exactly right.

THE COURT: If that's what you're going to do. Now, you are not going to do that, it's ridiculous.

MR. HALL: May I ask the officer a few questions, please?

THE COURT: Go ahead."

The defense attorney then took Officer Anderson on cross-examination in chambers and Officer Anderson testified he had been to Robinson's apartment over a half dozen times; that he met Robinson through G. Blue; that when he purchased the cocaine from Robinson, there was one other man present whom he did not know. He described the height, dress and complexion of the other man who was in the apartment but said he was not introduced to him and did not know his name. He said he had seen the defendant at various times on the street as well as in the apartment. At the close of the in-chambers hearing, following the examination of the witness by the defense counsel, the record is as follows:

"THE COURT: Do you have any questions?

MR. MUNSON: No, Your Honor.

THE COURT: Well, so you won't be surprised, you can ask him any questions you want to. You can do just as much of that as you want."

It is apparent that the above statement was directed to the state's attorney and pertained to further questioning at the in-chambers hearing.

Following the in-chambers hearing, the defense attorney continued his questioning of Officer Anderson before the jury. The officer described the automobile he was driving on his trips to see Robinson, and described the other individual in Robinson's apartment at the time he purchased the cocaine on January 18. He said that the unknown individual was sitting at the kitchen table playing records, and that he did not talk to him or make an inquiry of him concerning drugs. He said that following this purchase on January 18, and as a result of it, Robinson was arrested on February 18.

The state then offered other witnesses who testified as to the identification, analysis and chain of possession of the cocaine offered in evidence. At the close of the state's case, the appellant moved for a directed verdict of acquittal on the grounds that the state had not shown the amount or weight of the cocaine alleged to have been purchased by Anderson and the motion was overruled.

Willie Charles Keese testified as a witness for the defense. He said he was in Robinson's apartment on January 18 when Officer Anderson arrived and asked for a spoon of "coke." He said that when the officer made this request, they (apparently referring to the three of them) were "sitting in the house." Then, apparently referring to himself and Robinson, he said:

"We went off in the pantry. Went off in the back pantry back in the back and got some aluminum foil and some aspirins, put them in the aluminum foil and ground them up and gave it to him."

He said he watched the whole process and was present when Robinson gave Officer Anderson the aluminum foil containing the ground up aspirins. This witness then identified Officer Anderson as the person to whom he saw Robinson sell the ground aspirin.

On cross-examination Keese testified that he lived next door to Robinson; that he had known him for some time; that they are good friends. He said he visited with Robinson and "we rap together all the time." He said, however, that he did not know very much about Robinson.

"All I know is that he has been a good friend of mine all the time and he, I know he never had any cocaine and he never messes with the stuff."

He denied that he helped prepare the aspirin he said Robinson delivered to Officer Anderson.

"No, sir, I didn't help him. I say he ground it up in this paper. I was there watching him."

At the close of all of the evidence, Robinson's attorney renewed his motion for directed verdict of acquittal on the ground that the state had not proved any amount that Robinson was supposed to have delivered to the officer, and the motion was again denied.

We are inclined to agree with the trial court that at the time the in-chambers hearing was requested by the state's attorney and granted by the court, the defense of entrapment had not been raised at that point. We are unable to tell from the record before us what questions would have been propounded to Officer Anderson and what his answers would have been had the defense proceeded with its cross-examination of the officer without the hearing in chambers, but we are also unable to see how the appellant could have been prejudiced in connection with the in-chambers proceedings.

The appellant argues in his brief that the state was anticipating that he was going to call a witness in an effort to prove entrapement which he did not do, and that the state's objection and request for an in-chambers hearing was premature as the defendant had not begun to develop a case of entrapment. We are inclined to agree with the appellant that the state's objection and the court's ruling were premature, but we are unable to follow the appellant's reasoning in arguing that this premature objection and ruling in chambers were prejudicial to the appellant's rights in this case. We agree with the appellant's statement taken from 21 Am. Jur. 2d, Criminal Law, § 143:

"'Entrapment is an affirmative' or positive defense, and one that defendant must prove.'"

But, the appellant in his brief, argues as follows:

"The appellant understands that the State may offer evidence of other offenses in order to rebut a defense of entrapment but in the case at bar, the trial court ruled on cross-examination of the first witness by the State that the State's witness could testify that he bought marijuana on three different times from the appellant before he ever had a chance to

develop a defense of entrapment. This premature ruling by the trial court was prejudicial to the appellant because if he asked certain questions of the officer, the officer could then relate to the jury other purchases of controlled substances from the appellant before the question of entrapment could properly be raised and testimony received. If the appellant failed in his effort to prove entrapment, the State would have this damaging testimony before the jury even though the defense of entrapment was not successful and the appellant failed to take the witness stand and testify."

As we interpret the entire proceedings in chambers, it simply amounted to the court recognizing the right of the state to elicit from Officer Anderson's testimony that he had purchased marijuana on three occasions from the appellant in the event the appellant proceeded in developing a defense of entrapment. It would appear that the information elicited at the in-chambers hearing should have been as beneficial to the appellant as to the state and amounted to no more than a pronouncement of the law as the appellant's attorney says he already understands it to be, "that the State may offer evidence of other offenses in order to rebut a defense of entrapment."

We do not interpret the court's ruling as indicating the defense attorney would lose control of the questions he could propound to the witness on cross-examination or require him to elicit from the witness other evidence not responsive to the questions he would ask. There is nothing in the record to indicate that the defendant's attorney could not, and would not, have conducted his examination of Officer Anderson before the jury exactly as he did conduct the examination. It would appear from the record that the admissibility of evidence was not so much the question involved as was the question of procedure and timing of evidence to be offered, but which was never actually offered.

The appellant seems to recognize the rule as stated in 33 A.L.R. 2d 883, where under an annotation per-

taining to entrapment to commit offense with respect to narcotics law, § 6 states:

"When entrapment is interposed as a defense, the predisposition and criminal design of defendant become relevant, and the government may introduce evidence relating to the conduct and predisposition of the defendant as it bears upon the issue of entrapment, its tendency being to show that the law enforcement officers were acting in good faith and in the belief based upon reasonable information that accused was engaged in unlawful traffic in connection with the narcotics law."

This annotation cites the 1926 case of *United States* v. *Siegel,* 16 F. 2d 134, where the court said:

"'That the government, prior to the question of entrapment having been raised, could not introduce any evidence of complaints having been made to the officers, but that, when the issue of entrapment was raised, then it could show what grounds of suspicion they had.'"

The appellant indicates in his argument that by the ruling of the court in chambers he was forced to abandon his planned defense of entrapment in order to prevent the jury from learning that the appellant was also engaged in the sale and distribution of marijuana. We are unable to understand how the appellant would have been able to avoid this hazard had he proceeded with a defense of entrapment, so it would appear that prior knowledge of the full measure of such hazard should have been to his advantage. Certainly the defense that the appellant did rely on was not consistent with a defense of entrapment. Of course, the law is well settled in Arkansas that in certain cases similar acts or offenses can be shown as tending to show a system, design and guilty knowledge in connection with the offense for which the defendant is being tried. *Caton & Headley* v. *State,* 252 Ark. 420, 479 S.W. 2d 537; *Dail* v. *State,* 255 Ark. 836, 502 S.W. 2d 456; *Alford* v. *State,* 223 Ark. 330, 266 S.W. 2d 804.

A defense of entrapment was entirely inconsistent with the defense actually relied on before the jury in this case. The defendant was being tried for selling and delivering cocaine. The defendant pleaded not guilty and the only evidence he offered was that of his neighbor and close friend, Keese, who testified that he was present at all times when the purchase was made; that he watched Robinson prepare the material he delivered to Officer Anderson; that Robinson did not deliver cocaine; that "he never had any cocaine and he never messes with the stuff." Keese testified positively, following a reminder of the laws against perjury, that the material he saw Robinson prepare and deliver to Anderson was simply aspirin.

Where sale or delivery of controlled substances or contraband is involved, the sale or delivery of the alleged substances is ordinarily presupposed when the defense of entrapment is interposed. In *Brown* v. *State,* 248 Ark. 561, 453 S.W. 2d 50, the defense of entrapment was interposed in a marijuana case. We upheld the trial court in holding that the defense of entrapment was not available, and in that case we said:

"Appellant denied having any connection with, or knowledge of, the marijuana. In that situation he was not entitled to the defense of entrapment. The question was raised in *Rodriguez* v. *United States,* 227 F. 2d 912 (1955), and the court said:

'Moreover, in refusing to charge the jury on entrapment, the court stated that the defense was not available where, as in this case, the defendant denies the very acts upon which the prosecution and the defense are necessarily predicated. It is true that this defense may be raised even though the defendant pleads not guilty, but it 'assumes that the act charged was committed,' and where the defendant insists, as she did here, that she did not commit the acts charged, one of the bases of the defense is absent. On this ground and for other reasons mentioned, the district court was not in error in refusing the appellant's motion or requested charge on entrapment.'"

See also 61 A.L.R. 2d p. 677 and 21 Am. Jur. 2d § 144, p. 214.

It is true that the appellant himself simply pleaded not guilty and did not specifically deny that he delivered cocaine to Officer Anderson, but his only witness Mr. Keese testified that the substance actually delivered was aspirin and not cocaine. A similar situation arose in the Texas case of *Stone* v. *State*, 171 S.W. 2d 364, in which the defense of entrapment was argued on motion for rehearing and although the court found no evidence of entrapment, it stated:

> "While appellant did not testify, he had witnesses who denied the sale at the time alleged and raised the issue of an alibi as his chief defense."

See also the Missouri case of *State* v. *Varnon*, 174 S.W. 2d 146, involving the illegal sale of intoxicating liquor where the defense of entrapment was interposed. The appellant in that case contended that his instruction on entrapment should have been given and while the court found there was no evidence upon which to base such instruction, the court said:

> "Appellant denied making any sale of intoxicating liquor. This is not consistent with the defense of entrapment."

The judgment is affirmed.

HARRIS, C.J., not participating.