## Dennis McCASLIN *v.* STATE of Arkansas

CR 88-167                       767 S.W.2d 306

Supreme Court of Arkansas
Opinion delivered April 3, 1989

*Young & Finley*, by: *Dale W. Finley*, for appellant.

*Steve Clark*, Att'y Gen., by: *Kay J. Jackson Demailly*, Asst. Att'y Gen., for appellee.

DAVID NEWBERN, Justice. At the trial in which the appellant, Dennis McCaslin, was convicted of delivery of marijuana, the defense was entrapment. The entrapment issue was submitted to and rejected by the jury. McCaslin's contention on appeal is that a verdict should have been directed in his favor because the court should have found he was entrapped as a matter of law. The issue is whether entrapment must be found as a matter of law when the testimony of the accused, showing entrapment, is not rebutted by evidence presented by the state. We hold the court was correct in refusing to direct a verdict because, despite the failure of the state to produce evidence bearing directly on the issue of entrapment, the question of the credibility of McCaslin's testimony remained for the jury to decide. The conviction is affirmed.

Ronnie Fleetwood testified he was at a bar in Morrilton when Norman Bryant asked Fleetwood to take him to Russellville. Fleetwood said he refused but suggested his nephew McCaslin could do it. McCaslin and Theresa Shepherd testified they were

sitting together in the bar and that Bryant approached them and asked McCaslin to take him to Russellville. When McCaslin asked "What for?", Bryant replied "Fifty dollars."

McCaslin testified he borrowed Fleetwood's truck, and when he and Bryant left for Russellville, Bryant obtained some marijuana from a place behind the bar. McCaslin testified that Bryant asked McCaslin to sell the marijuana to Kimberly Powell and tell her it belonged to Fleetwood because he, Bryant, owed Powell $200, and she would try to deduct it from the price if she knew it belonged to Bryant. McCaslin testified he agreed to make the sale after being asked several times.

Powell was an undercover Russellville police officer. Bryant was also being paid "expenses," including apartment rent and money for drinks and entertainment, by the state police to work with them in apprehending drug offenders. Bryant was also being paid a fee for each "transaction" he consummated for the police. In addition, Bryant was in trouble with the law over charges that he had shot a man in the same bar where he, McCaslin, Theresa, and Fleetwood testified this episode began.

The jury was shown a video tape of the meeting of Bryant, McCaslin, and Powell, at Powell's Russellville apartment, in which McCaslin sold Powell a quarter of a pound of marijuana for $650. She tried to get him to take less, but he said Fleetwood told him he had to have $650. At one point after the transaction, while Bryant was out of the room, the video showed McCaslin discussing marijuana prices with Powell. Although the audio portion of the recording is difficult to understand, it is clear enough that one can hear McCaslin explaining to Powell that someone had been buying from the same source as Fleetwood for less than Fleetwood was paying. At one point McCaslin stated Fleetwood kept his own books and he paid the source $24,000 last year. McCaslin then said, "He's trying to tell us he's giving $2800 a pound for it. I can figure maybe eighteen."

Bryant was subpoenaed as a witness by both the state and McCaslin. The state's subpoena was served, and Bryant was at the courthouse on the day of trial. However, when the prosecutor called him as a witness, he had fled and was unavailable to testify. McCaslin did not seek a continuance for the purpose of obtaining Bryant's testimony, thus the only evidence bearing on what

happened between McCaslin and Bryant as they drove from Morrilton to Russellville came from McCaslin's testimony.

In Arkansas, entrapment is an affirmative defense, Ark. Code Ann. § 5-2-209(a) (1987), upon which the defendant bears the burden of proof by a preponderance of the evidence. Ark. Code Ann. § 5-1-111(d) (1987). *See Spears* v. *State*, 264 Ark. 83, 568 S.W.2d 492 (1978). McCaslin has cited no case decided in this jurisdiction in which it was held that entrapment, or any affirmative defense, was established as a matter of law solely on the basis of the unrebutted testimony of the party asserting it. There is no requirement that his testimony be believed. In civil cases we hold that a party who bears the burden of proof is not entitled to a directed verdict because the jury need not necessarily believe his evidence. *James* v. *Bill C. Harris Construction Co.*, 297 Ark. 435, 763 S.W.2d 640 (1989). Also in civil cases, we have held that a directed verdict in favor of a party bearing the burden of proof may be proper, but only if the facts he must establish have been admitted by the other (adversary) party, leaving no question for a jury to decide. *Barger* v. *Farrell*, 289 Ark. 252, 711 S.W.2d 773 (1986). Absent evidence from the state confirming his entrapment story, McCaslin's credibility was for the jury to decide.

McCaslin has cited and quoted extensively from *Sorrells* v. *United States*, 287 U.S. 435 (1932), a landmark case on entrapment in which the Supreme Court discussed the nature of the defense and held that the petitioner had presented an issue of entrapment for the jury to decide. Also cited is *Sherman* v. *United States*, 356 U.S. 369 (1958), in which the Supreme Court concluded the petitioner had established entrapment as a matter of law on the basis of the testimony of the prosecution witnesses.

McCaslin also cites *Roundtree* v. *State*, 271 So. 2d 160 (Fla. App. 1973), and *State* v. *Sainz*, 84 N.M. 259, 501 P.2d 1247 (1972), as cases in which it was held there was entrapment as a matter of law. In the *Roundtree* case there was testimony by an undercover deputy sheriff showing that the deputy induced the drug sale with which Roundtree was charged. In the *Sainz* case the court recited facts without attribution to testimony, so we cannot tell how the entrapment was shown.

Two Mississippi cases in which it was held that entrapment

had been established as a matter of law are, on their facts, remarkably similar to the case before us now. In *Jones* v. *State*, 285 So. 2d 152 (Miss. 1973), the defendant testified an informant asked him to make the sale of marijuana because the informant owed the buyer money and thus would expect to get the marijuana as repayment of the debt. The Mississipi Supreme Court noted that entrapment is an affirmative defense but concluded it was established, apparently solely on the defendant's unrebutted testimony. The decision was followed by *Sylar* v. *State*, 340 So. 2d 10 (Miss. 1976), where the court noted that the exchange of government marijuana for government money is not even a sale. In *Torrence* v. *State*, 380 So. 2d 248 (Miss. 1980), the other case factually similar to the one before us now, the defendant testified that the informant told him she needed to sell marijuana but could not make the sale personally because she owed the buyer money. Absent government rebuttal testimony it was again held that entrapment was established.

These Mississippi cases offer no discussion of the burden of proof issue and do not explain why the credibility of the defendant was not an issue for the jury. An explanation of a similar Arizona ruling is offered in *State* v. *McKinney*, 108 Ariz. 436, 501 P.2d 378 (1972). There, a defendant testified to facts showing entrapment. The state offered no rebuttal. The defendant had sought from the state the name of the informant who, he said, had set him up, and the court denied his motion seeking the information. The court also denied the defendant's motion for a continuance to obtain the presence of the informant at the trial. The Arizona Supreme Court pointed out that a defendant is in a weak position to establish entrapment. While it is an affirmative defense, once the defendant has raised it, the burden of proof shifts to the state, the court held.

The authority cited by the Arizona court for the shifting of the burden of proof is from federal court cases, primarily *United States* v. *Brown*, 421 F.2d 1283 (9th Cir. 1970). There the court of appeals affirmed the conviction but stated the federal standard according to which the government must prove lack of entrapment beyond a reasonable doubt if the defense has been raised. The *Brown* decision was based on *Notaro* v. *United States*, 363 F.2d 169 (9th Cir. 1966), in which it was noted that the Supreme Court in the *Sorrells* and *Sherman* cases had not established the

nature of the burden of proof for federal entrapment cases and had not determined by which party it was to be borne.

■ Wherever the burden may lie in federal cases, as we noted at the outset of this opinion, it has been placed on the defendant by statute in Arkansas. Even if the matter had been discussed in the *Sorrells* and *Sherman* cases, those were not decisions on constitutional law. They only dealt with federal law and thus would not be binding on the states. *See Sylar* v. *State, supra.* We have no quarrel with the proposition that Bryant should have been present to testify about his role in the selling of the marijuana to Powell. McCaslin does not argue that here, and properly so, as he did not pursue it with the trial court. The only issue before us is whether McCaslin's testimony established entrapment as a matter of law. We hold it did not, and it was thus proper for the question to be submitted to the jury.

Affirmed.

PURTLE, J., dissents from this opinion.

HICKMAN and GLAZE, JJ., concur with this opinion.

TOM GLAZE, Justice, concurring. I certainly agree with the result reached by the majority, but the majority opinion confuses matters by citing and discussing cases from Mississippi, Arizona and United States Ninth Circuit Court of Appeals that are simply inapplicable. Arkansas law specifically provides that entrapment is an affirmative defense which the defendant must prove by a preponderance of the evidence. However, the defendant's burden does not arise until the state has met its burden of proof as to the elements of the offense with which he is charged. *Fairchild* v. *State*, 284 Ark. 289, 681 S.W.2d 380 (1984), *cert. denied*, 471 U.S. 1111 (1985); *Spears* v. *State*, 264 Ark. 83, 568 S.W.2d 492 (1978).

Here, the state undisputedly met its burden of proof. In fact, the appellant admitted his complicity in the sale and delivery of the marijuana to police officer Powell. Since only the appellant's testimony—that he had been entrapped—conflicted with the state's proof that he willingly committed the crime, the appellant failed to meet his burden of proving his affirmative defense. Arkansas law is well settled that a jury is not bound to believe the appellant's story. This court's decision should end at this point.

Since it does not, I remain hopeful that today's decision in no way suggests this court is entertaining the idea that the respective burdens of proof of the state and defendant in cases where the defense of entrapment is raised should be reanalyzed or reshuffled along the views expressed in the cases from other jurisdictions discussed in the majority opinion. If such a suggestion is intended, I am unequivocally against such an idea.

JOHN I. PURTLE, Justice, dissenting. We are called upon frequently to review cases involving allegations of entrapment by various law enforcement agencies. This case, like *White* v. *State*, 298 Ark. 163, 765 S.W.2d 949 (1989), and many others, was initiated by the. police. Naturally, the scheme included an informant who has a criminal record and is facing another trip to the penitentiary, and an "undercover" law enforcement person — in this case a woman.

The informant in this case faced not just a sentence involving a shooting; he faced a sentence for shooting with intent to kill. His desire to obtain favorable action in his own criminal case no doubt weighed most heavily on his mind as he went about his designated job of setting people up for criminal charges. The fact that the informant's rent was paid by the police, as were his expenses such as travel, food, drinks, pool fees, and game machine costs, did not reduce his desire to trap the appellant. The informant was also paid $30 to $50 "by the sale" for each transaction for all those he could get to deal in marijuana. The state also paid the rent and expenses for the undercover officer and her live-in state police boyfriend.

In the present case only two people know what actually occurred when this deal was planned — the appellant and the informant. The informant, pursuant to a subpoena issued by the state, showed up at the commencement of the trial but mysteriously disappeared for the rest of the trial. This disappearing act, although not new, is becoming commonplace in this type of case. Had this witness been compelled to testify, it is not too inconceivable that the jury might have believed that indeed the appellant was entrapped. The defense counsel had caused a subpoena to be issued for the same witness but it was not served by the sheriff because he had already served the state's subpoena.

The jury was shown a video tape of the meeting of Bryant,

McCaslin, and Powell, at Powell's Russellville apartment, in which McCaslin sold Powell a quarter of a pound of marijuana for $650. All of this, of course, had been pre-planned by the officers and the informant. No doubt Bryant coached the appellant on what to do and say when they arrived at the undercover agent's apartment. If the appellant and the informant had rehearsed the transaction, the video could not have been more incriminating to the appellant's case. The missing witness was absolutely essential to the defense. The state offered no explanation for his mysterious disappearance, but I have no doubt whatsoever that the state could have produced him for trial.

In Arkansas, entrapment is by statute an affirmative defense, Ark. Code Ann. § 5-2-209(a) (1987). Consequently the tradition has been that the defendant must bear the burden of proof on this defense by a preponderance of the evidence. Ark. Code Ann. § 5-1-111(d) (1987); see *Walls* v. *State*, 280 Ark. 291, 658 S.W.2d 362 (1983); and *Spears* v. *State*, 264 Ark. 83, 568 S.W.2d 492 (1978). The majority correctly notes that McCaslin has cited no precedent from this jurisdiction in which it was held that entrapment was established as a matter of law solely on the basis of the unrebutted testimony of the defendant. However, I have found no Arkansas decision where this issue has been presented to an appellate court.

Ordinarily there is no requirement that the trier of fact believe a defendant's testimony. Thus, given the defendant's burden of proof on the issue of entrapment, this question of fact was submitted to and decided by the jury. However, it is significant that the state made no effort to offer any evidence to rebut the appellant's version of the facts.

McCaslin has cited and quoted extensively from *Sorrells* v. *United States*, 287 U.S. 435 (1932), and also has cited *Sherman* v. *United States*, 356 U.S. 369 (1958). These two decisions define the entrapment defense in the federal courts, but they are not binding on this court. The Supreme Court's discussion of the entrapment defense is, however, quite instructive.

The United States Supreme Court discussed the function of the entrapment defense in *Sherman* v. *United States,* supra:

In *Sorrells* v. *United States*, 287 U.S. 435, this Court

firmly recognized the defense of entrapment in the federal courts. The intervening years have in no way detracted from the principles underlying that decision. The function of law enforcement is the prevention of crime and the apprehension of criminals. Manifestly, that function does not include the manufacturing of crime. Criminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer. However, "A different question is presented when the criminal design originates with the officials of the Government, and they implant in the mind of an innocent person the disposition to commit the alleged offense and induce its commission in order that they may prosecute." 287 U.S. at 442. Then stealth and strategy become as objectionable police methods as the coerced confession and the unlawful search. Congress could not have intended that its statutes were to be enforced by tempting innocent persons into violations.

The majority opinion discusses in some detail several Mississippi, Arizona, and Ninth Circuit Court of Appeals decisions that essentially shift the burden to the state once the defense has been raised. As noted by the Arizona Supreme Court in *State* v. *McKinney*, 108 Ariz. 436, 501 P.2d 378 (1972), a defendant is in a very poor position to establish entrapment. The question to be decided is whether we should do as the Mississippi and Arizona courts have done and hold that, by presenting a prima facie case of entrapment, a defendant has satisfied his burden of proof at that point and that the burden then shifts to the state to come forward with evidence that the defendant was not entrapped.

The nature of entrapment is such that it is often unlikely the act itself will be observed by anyone other than the defendant and the government operative. Moreover, I cannot help but note the pattern of "unavailability" of these "informants" to testify at trial. A defendant who asserts entrapment necessarily places himself in the posture of admitting commission of an illegal act. *Spears* v. *State*, supra; and *Brown* v. *State*, 248 Ark. 561, 453 S.W.2d 50 (1970). He thus is in a very weak position to convince a jury that he was indeed induced by the state to commit a crime.

The state cites *Walls* v. *State*, supra, and *Leeper* v. *State*, 264 Ark. 298, 571 S.W.2d 580 (1978), in support of its contention

that entrapment may be established as a matter of law only where there are no disputed facts. In *Leeper*, there was testimony by the undercover officers who participated in the illegal whisky purchase. The "informant" also testified. In *Walls*, the informant was not present to testify. However, an undercover state police officer testified that, while the alleged informer had "paved the way" for the drug sale, he was not, to the officer's knowledge, employed by or otherwise compensated by the state police. That left open the question whether, in the words of Ark. Code Ann. § 5-2-209(b) (1987), the alleged informant was "a person acting in cooperation with" a law enforcement officer. *Walls* is distinguishable from the present case because here there is no dispute concerning the fact that Bryant was acting in cooperation with the police.

There is absolutely no rebuttal by the state of McCaslin's testimony that Bryant supplied the marijuana and induced him to make the sale. The majority cites no case holding that the testimony of a defendant asserting entrapment may not establish the defense as a matter of law if the state has produced no rebuttal evidence. Nor have I found any such case. Since this question is one of first impression in this jurisdiction, we should strive to insure that this decision is founded upon solid principles of law and justice.

I conclude that we should follow the decisions from other jurisdictions holding that the burden of proving the defense may be satisfied by the testimony of the accused unless that testimony is rebutted by evidence produced by the state. Because an accused must in effect admit having committed what would otherwise be an offense in order to take advantage of the entrapment defense, it is of no consequence whether the state must prove lack of entrapment beyond a reasonable doubt. That is so because assertion of the defense of entrapment does not negate an element of the crime. See E. Osenbaugh, *The Constitutionality of Affirmative Defenses to Criminal Charges*, 29 Ark. L. Rev. 429 (1976). The overall burden of proof, or the "burden of persuasion" as Professor Osenbaugh calls it, remains with the defendant on the issue of entrapment. However, the state must go forward with the evidence when the defendant's evidence has presented a prima facie case on the issue. When the state is unable to produce any evidence to dispute that evidence, even if it consists only of the

testimony of the accused, a verdict should be directed.

The police in this case at the least actively participated in the crime; at worst the police actually were the major factor that precipitated this crime. Under such circumstances, it is not unreasonable to place upon the state the burden of establishing that the defendant was not entrapped. I would reverse and dismiss because, in my opinion, it was the police who planned and executed this crime. After all, the function of law enforcement does not include the manufacturing of criminal activity.