Dale MORRIS *v.* STATE of Arkansas

CR 89-154                                      779 S.W.2d 526

Supreme Court of Arkansas
Opinion delivered November 6, 1989

*Sullivan, Emmons & Kissee*, by: *Larry Dean Kissee*; and *Mark Johnson*, for appellant.

*Steve Clark*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. The appellant was convicted

and sentenced for the sale of a controlled substance. We affirm the judgment of conviction.

An undercover agent met the appellant at the Crystal Nickel Club in Cherokee Village. She asked if he had any marijuana to sell. He said yes and asked her to follow him to his car. There he sold her a small baggie of marijuana and said it was "good marijuana." Laboratory tests showed the baggie did in fact contain marijuana. Appellant pleaded not guilty and, at trial, testified that he did not sell marijuana to the undercover agent. The trial court denied appellant's requested instruction on entrapment. Appellant assigns this ruling as error.

Ark. Code Ann. § 5-2-209 (1987), provides that entrapment is an affirmative defense which occurs when a law enforcement officer induces the commission of an offense by a normally law-abiding person. The statute further provides: "Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment." We have held that merely affording one the means and opportunity to do that which he is otherwise ready, willing, and able to do does not constitute entrapment. *See Fight* v. *State*, 254 Ark. 927, 497 S.W.2d 262 (1973); *Spears* v. *State*, 264 Ark. 83, 568 S.W.2d 492 (1978).

We have considered entrapment an affirmative defense and, when it is invoked, it is necessarily assumed that the act charged was committed. *Fight, supra.* We have held that when a defendant insists that he did not commit the acts he is charged with, one of the bases of the defense is absent, and he is not entitled to use the defense of entrapment. *Robinson* v. *State*, 255 Ark. 893, 503 S.W.2d 883 (1974); *Brown* v. *State*, 248 Ark. 561, 453 S.W.2d 50 (1970). Thus, according to our cases, the appellant was not entitled to a jury instruction on entrapment, since he denied any involvement in the crime of selling marijuana to an undercover agent.

However, in *Mathews* v. *United States*, 485 U.S. 58 (1988), the Court held:

> [E]ven if the defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment.

The underlying rationale of the holding is that a defendant is entitled to an instruction on any defense when there is sufficient evidence for a jury to find in his favor. We are not bound by the *Mathews* decision as it involves the construction of federal criminal procedure law and does not have a footing in constitutional law. Still, appellant asks us to follow *Mathews*, rather than our prior cases.

It makes no difference in the case at bar whether we follow *Mathews* or our prior decisions because there simply was no evidence in this case from which the jury could have found entrapment. Thus, we affirm the point of appeal. However, we can think of at least two situations where our prior cases and *Mathews* would conflict: (1) when the accused denies committing the offense charged, but the prosecution's case-in-chief includes substantial evidence of entrapment; and (2) when the accused is charged with conspiracy, but denies being party to the conspiracy, and claims that any overt acts done by him were the result of entrapment. Neither of those cases are before us, and we will save the resolution of the issue until we have such a case.

For his other point of appeal the appellant argues that the trial court erred in refusing to grant a mistrial because of a question asked on cross-examination of a character witness. The trial court did not err. On direct examination the witness testified as follows:

> Well, I've never heard anything against Dale Morris since I can remember, I mean, and I've never heard of him being in any trouble except the present trouble that he's in now. All I know about him, he was always a pretty hard-working fellow and took care of his own business pretty well.

On cross-examination the prosecutor asked, "You haven't heard about his DWI's?" The witness responded that he had not, and appellant objected and moved for a mistrial.

A.R.E. Rule 404(a) deals with the basic question of whether character evidence should be admitted. Under it, an accused may introduce evidence of good character, just as the appellant in this case did. Once the admissibility of character evidence is established, Rule 405 provides the method of proof, as follows in pertinent part: "[P]roof may be made by testimony as to

reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct."

The rule clearly provides that in cross-examining a defendant's character witness, it is permissible to inquire into the witness's knowledge of specific instances of conduct. *Reel* v. *State*, 288 Ark. 189, 702 S.W.2d 809 (1986). Such cross-examination tests the witness's knowledge of the defendant's reputation and that, in turn, may go to the weight to be given his opinion.

Affirmed.

NEWBERN, J., concurs.

PURTLE, J., dissents.

DAVID NEWBERN, Justice, concurring. The result reached by the court is correct because Morris failed to present evidence sufficient to establish a prima facie case of entrapment.

The court's opinion that the defense of entrapment is not available to a defendant who does not admit having committed the offense is based on *Robinson* v. *State*, 255 Ark. 893, 503 S.W.2d 883 (1974), and *Brown* v. *State*, 248 Ark. 561, 453 S.W.2d 50 (1970). The *Brown* case was apparently the first one in which this court considered the question whether a defense of entrapment was necessarily inconsistent with a defense denying the facts charged. In the *Brown* case, the court relied on *Rodriguez* v. *United States*, 227 F.2d 912 (5th Cir. 1955), which was said to be "decidedly the majority rule."

Because of *Mathews* v. *United States*, 485 U.S. 58 (1988), the *Rodriguez* case would not be decided today as it was in 1955. Although I agree with the statement in the majority opinion that we are not bound by the *Mathews* decision, I believe there is logic underlying the Supreme Court's opinion which is correct and which convinces me our earlier cases were wrongly decided.

If a defendant denies having been at the scene of the crime, for example, but is identified as having been there by a witness, a claim of entrapment is not inconsistent with the defendant's claim that the witness has misidentified him or her. If the government entrapped whomever committed the crime, the

defendant should be allowed entrapment as a defense even though the jury may believe the identifying witness. The jury may disbelieve the defendant's evidence that he or she was not present when the crime was committed but it may, without any inconsistency whatever, believe the defendant's independent evidence of entrapment. What if strong evidence of entrapment is available to such a defendant? Should the defendant have to choose between presenting evidence of alibi and evidence of entrapment? The answer is no because in such a situation, the defendant is not presenting two mutually exclusive lines of evidence.

In the *Robinson* case the defendant presented a witness who testified he saw Robinson give powdered aspirin to an undercover officer. The state presented evidence that it was cocaine. The court concluded the defense of entrapment was inconsistent with the defendant's evidence. Whether the jury believed the substance transferred from the defendant to the officer was cocaine or aspirin is unrelated to the defense of entrapment.

While it may sound "right" to say the entrapment defense necessarily assumes "the act" was committed, the statement cannot stand close scrutiny. What is meant by "the act?" Does is mean necessarily by the defendant? As in the *Robinson* case, may it not mean an appearance of "the act?"

Finally, I must ask what harm it would do in these cases to permit the instruction. As the court's opinion correctly points out, the defense is an affirmative one, and the burden of proof is wholly on the accused in this state. *McCaslin* v. *State*, 298 Ark. 335, 767 S.W.2d 306 (1989). In my view, if the accused is able to meet that burden by establishing a prima facie case of entrapment, then the instruction should be given regardless of other defenses the accused may have presented.

JOHN I. PURTLE, Justice, dissenting. This court ought not voluntarily and knowingly refuse to adhere to the decisions of the United States Supreme Court. In a quite similar case, *Mathews* v. *United States*, 485 U.S. 58 (1988), the United States Supreme Court held:

> [E]ven if the defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury

could find entrapment.

While *Mathews* concerns the construction of federal criminal procedure rules, and our prior decisions dealing with entrapment concern the Arkansas criminal procedure rules and statutes, the fundamental issue remains the same. In Arkansas, entrapment is an affirmative defense which must be proven by the accused. Our cases hold that, in order to present the defense of entrapment, the defendant must admit that he committed the criminal act charged. In light of the implications of *Mathews*, I am of the opinion that a constitutional question of due process of law is presented in the present case.

Law enforcement officers ought not to be paid to go about actively encouraging people to commit crimes. That, unfortunately, is exactly what happens in entrapment cases. Entrapment by law-enforcement officials is a cancerous growth which is spreading rapidly in this country. Instead of trying to prevent crimes, some officers are paid to induce people to commit crimes under the theory that it is not entrapment to lead them to commit crimes if they were predisposed to do so. Naturally, one must conclude that, had a police officer not led an individual down the primrose path, no offense would have been committed. For a general discussion of my views on entrapment, see *McCaslin* v. *State*, 298 Ark. at 340, 767 S.W.2d at 309 (1989) (Purtle, J., dissenting) and *State v. White*, 298 Ark. at 169, 765 S.W.2d at 953 (1989) (Purtle, J., dissenting). I am still firmly of the opinion that police officers ought to be used to prevent crimes rather than to induce the commission of crimes.

Entrapment is an affirmative defense. Ark. Code Ann. § 5- 2-209(a) (1987). In paragraph (b), entrapment is said to occur "when a law enforcement officer or any person acting in cooperation with him, induces the commission of an offense by using persuasion or other means likely to cause normally law-abiding persons to commit the offense." Until this offense was allegedly committed, there was no record or indication that the appellant had ever violated any law. That certainly constitutes substantial evidence that he was a law-abiding person.

The "undercover" agent in this case admitted that "the crime is not committed until it's solicited by me." According to the agent's own testimony, after she initiated a conversation with

the appellant, they went out to the parking lot where she found in the glove compartment of the appellant's car a baggie containing about one-tenth of an ounce of marijuana weighing approximately 4.8. grams. This amount was certainly far less than that required to create a presumption of possession with intent to deliver. This "undercover" agent induced the appellant to go with her to the parking lot and persuaded him to sell her about one-tenth of an ounce of marijuana for $10.00. For his yielding to temptation, he was sentenced to ten years and fined $25,000.

The tone of this proceeding was set in the information when it charged Dale Eugene Morris, "a/k/a Joe Dale Morris," with the crime of delivery of a controlled substance. This usage creates the impression that the appellant was employing an alias, leading to the logical conclusion that it was for the purpose of evading the law. However, the facts reveal that the appellant had never been in any trouble before and had not, in fact, used two different names. The "undercover" agent simply had supplied the two names from her notes. The state's tactics aimed at damning the appellant's character were further refined when the state brought forth information regarding the appellant's subsequent charges of DWI during the cross-examination of a character witness. More will be said about this tactic later.

In *Mathews* v. *United States*, supra, the accused denied that he had participated in the act forming the basis for the criminal charge he was facing. The trial court denied the motion to give an entrapment instruction or to allow such a defense. The District Court denied the appellant the defense of entrapment because he refused to admit the elements of the crime charged. The United States Supreme Court, by Chief Justice Rehnquist, reversed and held that "even if the defendant denies one or more elements of the crime, he is entitled to an entrapment instruction whenever there is sufficient evidence from which a reasonable jury could find entrapment."

In the present case, the state presented evidence from which the jury would have found that the crime was a result of entrapment. Certainly, under such circumstances, the appellant should not have been denied the instruction. It seems to me that fundamental fairness and basic principles of criminal justice require that the accused be allowed to have an instruction given

on a matter which has arisen during the course of the trial. This is so even though the accused may have relied upon another defense.

I return to the issue of the appellant being asked about subsequent criminal acts on cross-examination. This maneuver seems to have been planned by the state as part of its effort to portray the appellant in the worst possible light. The appellant's character witness was asked if the appellant was of good moral character; he replied that he did not know of the appellant "being in any trouble." However, it was the prosecutor who asked the witness if he had made the statement, "I never heard of him being in trouble." Thus, the stage was set to ask the next question: "You haven't heard about his DWIs?" Apparently, the appellant had been charged with two offenses of DWI after he was accused of having sold the one-tenth ounce of marijuana.

The state's conduct appears to be a clear violation of the long-standing "bad character" rule set forth in *Alford* v. *State*, 223 Ark. 330, 266 S.W.2d 804 (1954). Further, the state's resort to this strategem is a manifest violation of Rule 404(b) of the Arkansas Rules of Evidence, which provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible of other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Unrelated offenses or acts of misconduct are not relevant or admissible in an independent criminal trial. To allow such evidence would be to countenance a blow "to the very heart of fairness and justice in criminal trials." *Alford* v. *State, supra.* Independent acts are, of course, sometimes admissible for purposes such as proof of motive, intent, plan, and mistake or accident, as contemplated by Rule 404(b). No argument has been made that the DWIs were related in any way to the *modus operandi* of the appellant.

Clearly, the sole purpose of the state in introducing evidence of these acts was to show that the appellant, because of his bad character in other respects, was guilty of the crime for which he was being tried. A number of cases treat similar instances of guilt,

so to speak, by association. See *Henderson* v. *State*, 291 Ark. 138, 722 S.W.2d 842 (1987); *Lackey* v. *State*, 283 Ark. 150, 671 S.W.2d 757 (1984); *Rios* v. *State*, 262 Ark. 407, 557 S.W.2d 198 (1977).

I cannot agree with the state's argument that the appellant's counsel opened the door to the character questions concerning other "bad acts." a trial should never be conceived as a contest between the attorneys; rather, it should strive toward discerning the truth and obtaining justice.

The case should be reversed and remanded for a new trial because the state introduced irrelevant independent "bad acts" to show that the appellant was guilty of the crime charged, and because the trial court refused to give an instruction on entrapment. I cannot fault the trial court on the refusal to give the instruction because he was merely following precedent. We could, however, at least issue a caveat that such instructions may be proper even when the affirmative defense of entrapment has not been raised prior to trial.